FRANK, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

(207 N. W. 89.)

(File No. 5551.   Opinion filed January 23, 1926.)

1.  **Master and Servant—Findings—Accidents—Finding That Thrombus Phlebitis Was Compensable as Injury by Accident Held Not Sustained by Evidence.**

    Evidence held not to sustain finding of board and commissioner that thrombus phlebitis, first appearing while employee was pushing wheelbarrow of cinders in customary manner without any bruise or hurt, was compensable as injury by accident, within Rev. Code 1919, Sec. 9490.

2.  **Master and Servant—Compensable Injuries—Merely Eperiencing First Symptoms of Disease While Working Does Not Show Compensable Injury.**

    Merely experiencing first symptoms of disease while working does not establish compensable injury within Rev. Code 1919, Sec. 9490, but injury must occur because of work.

3.  **Master and Servant—Industrial Commissioner—Findings on Substantional Evidence in Compensation Case Conclusive.**

    In compensation proceedings, findings of board of arbitration and industrial commissioner will not be disturbed on review, if supported by substantial creditable evidence.

4.  **Master and Servant—Workman's Compensation Law—Accident Causing Injury Must Be Shown to Recover Compensation.**

    To recover compensation, claimant must show that some mishap, some untoward and unexpected event, occurred to which accidental injury might be traced, and not that he was doing work in usual manner, as intended, without unusual strain or mishap.

Appeal from Circuit Court, Corson County; Hon. W. F. Eddy, Judge.

Proceeding under Workmen's Compensation Act by Martin Frank, claimant, for injuries, opposed by the Chicago, Milwaukee & St. Paul Railway Company, employer. An award by the Board of Arbitration, approved by the Industrial Commissioner, was appealed to circuit court. From a judgment reversing the order granting the award, and from an order overruling the motion for new trial, claimant appeals. Judgment and order affirmed.

W. M. Potts, of Mobridge, for Appellant.

E. L. Grantham and H. O. Hepperle, both of Aberdeen, for Respondent.

(1)   To point one of the opinion, Appellant cited:   Babish v. Oliver Mining Co. (Minn.), 195 N. W. 784; Tintick Milling Co. v. Industrial Commissioner, 206 Pac. 278; United Paper Board Co. v. Lewis, 65 Ind. App. 356, 117 N. E. 276; In Re Madden, 222 Mass. 487, 111 N. E. 379.

Respondent cited:   Chief Consol. Min. Co. v. Salisbury (Utah), 210 Pac. 329; Tomovich v. Dept .of Labor (Wash.), 218 Pac. 197; Woodruff v. Howes Const. Co. (N. Y.), 127 N. E. 270; Kutschmar v. Briggs Mfg. Co. (Mich.), 163 N. W. 933; Stambaugh v. Peerless Wire Fence Co. (Mich.), 164 N. W. 537; Tackles v. Bryant & Detweiler Co. (Mich.), 167 N. W. 36; Perkins v. Jackson Cushion Spring Co. (Mich.), 172 N. W. 374.

BURCH, C.   This matter was first tried on December 9, 1921, before a board of arbitration appointed under the provisions of the Workmen's Compensation Act (Acts 1917, c. 376).   Said board found that claimant had suffered an injury by accident while in the employ of defendant railway company, and awarded a recovery under the terms of said act.   On review by the industrial commissioner the decision of the board of arbitration was approved.   From this award defendant appealed to the circuit court of Corson county.   On the record the circuit court made findings of fact and conclusions of law contrary to those of the arbitration board, and rendered judgment in favor of defendant. From this judgment and order overruling motion for new trial in the circuit court claimant appeals.

On the 4th day of February, 1921, plaintiff, Martin Frank, was an employee of the defendant railway company; his duties being to clean out ashes and cinders in the pits where they were dumped from the engines in the roundhouse in McIntosh.   He would shovel the cinders into a wheelbarrow, wheel them up an inclined plank, and dump them into a hand car, where they would afterwards be taken by other workmen for final disposition.   Plaintiff had been doing this work for about three years, and there was nothing unusual in the manner in which he was performing it on this day.   Plaintiff says that about 3:30 o'clock p. m. of said day, while he was wheeling a wheel barrow loaded with cinders up the incline just prior to dumping it, he felt a pain in the groin. He says:

"I did not fall off the plank. Nothing hit me, I just felt the pain."

Appellant's abstract of plaintiff's evidence describing the occurrence states:

"When I got hurt it was about a half hour before the whistle blew. I came on the planks with the wheelbarrow, and, when I go to shake the wheelbarrow, there were some chunks, and I pushed it, and so it hurt me, and so when I dumped it I came over back and it hurt me here (indicating groin on right side). It hurt very much. It was so that it burned. When I lifted the wheelbarrow I had to sit down on the bank and put my hand up there. I never had anything, and nobody was there. I was alone up there to work. When I felt the pain I sat down, and I felt the pain after I sat down. It was a very hard pain. There was no one helping me on this job. I had done the work alone, all the time. I sat down on the plank until the whistle blew, and my time was out. I live close to the roundhouse. I come home. I hope maybe it get better by night. I never have no sickness, and go in the bed, and so I am in bed, and then I get a fever. Get more pain all over. Then told the boy to go for the doctor, and the doctor he could not find; he was on farm, and I was in bad pain, and the other (next) day the doctor he came down and put on hot water."

Dr. Olson, the company physician, attended plaintiff. On his first call he says plaintiff had a temperature, and was coughing, had a pain in his thigh, and swelling of the right thigh; that he did not make a diagnosis at that time, but about a week later he did, and found plaintiff afflicted with thrombus phlebitis, which he describes as a clot of blood formed in the vein through infection; that in this case the thrombus (clot of blood) formed in the upper part of the thigh in the femoral vein, a large vein near the middle of the leg; that there was no evidence of a bruise; that prior to the diagnosis for two or three days he had treated the affliction as a bruise because palintiff told him he had been injured. Some time in July following Dr. Twining, a physician of Mobridge, in charge of the hospital there, made a diagnosis of plaintiff's condition. Dr. Rock, a physician of Mobridge and witness for claimant, made an examination sometime in August or September. Dr. Corbett, a surgeon of Minneapolis, testified by

deposition as an expert from the facts as disclosed by the testimony of plaintiff and Dr. Twining that—

"Considering this testimony as a history of the case, I am able to state the affliction, or to diagnose the case, with reasonable certainty. He was afflicted with thrombus of the femoral vein. He was afflicted with an infection of the mouth known as pyorrhea. He was afflicted with a decompensation of the heart, secondary to the infection in his mouth and secondary to high blood pressure.

"The primary cause of his condition would be the infection in his mouth. That would be ætiological in the production of high blood pressure. The condition of his heart, I believe, was the natural result of the infection in his mouth. The testimony is the basis of the opinion expressed. I believe his condition was of long standing. The cause of his entire disability was infection. In the leg there are two sets of veins. The superficial veins and the deep veins. It is my opinion that in his case the deep vein was occluded with a clot of blood that we call a thrombus. As a result of this there occurred (fist) swelling of the leg. Then as the superficial veins of the leg took on the functions from that member the swelling in some measure subsided. Occlusion is the plugging of any hollow tube. I think the femoral vein was plugged very high in the groin. I have had a very large number of cases of this kind. Patients in whom this condition has occurred have practically without exception been patients who were confined to bed, suffering from some septic poisoning. In all of these cases infection has been the fundamental cause. The secondary causes were either some change in the blood, such as occurs in a patient with typhoid or slowing of the blood stream such as might occur in certain forms of heart disease. Traumatism is never a cause of trombus.

"Thrombus of a vein is a gradual process. Experimental research has shown that at least 24 hours is necessary for the formation of such a thrombus. In a large vessel much longer time would be necessary for complete occlusion to occur, and the condition would not be manifest until the plugging became complete. When it did, then we could expect our first noticeable symptoms."

Dr. Murdy, a surgeon of Aberdeen, confirms the conclusions of Dr. Corbett.

[1, 2]   The sole question to be determined in this case is whether or not the affliction was the result of an accident. Section 9490, R. C. 1919, defines the word "injury" for which compensation is allowed under the Workmen's Compensation Act as follows:

" 'Injury' or 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except as it shall result from the injury."

Our first concern is to determine the cause of claimant's injury so we may know whether or not such injury was by accident arising out of and in the course of the employment. Merely experiencing the first symptoms of a disease while working is not sufficient—the injury must occur because of the work. The injury to claimant's leg is concededly, or at least no other explanation is given, the result of a clot of blood in the femoral vein of the leg. The direct cause of all the pain, fever swelling, and other complications is the clot of blood. What caused the clot of blood? Defendant company says disease or infection, and in this is pretty well supported by medical authority. Claimant says the labor he was performing, and supports this contention by the circumstances surrounding the first appearance of the affliction and some admissions of the medical men.

[3]   If there is substantial credible evidence supporting the findings of the board of arbitration and of the industrial commissioner on review, such findings will not be disturbed. Wakefield v. Warren-Lamb Lumber Co., 46 S. D. 510, 194 N. W. 835; Day v. Sioux Falls Fruit Co., 43 S. D. 65, 177 N. W. 816; Vodopich v. Trojan Min. Co., 43 S. D. 540, 180 N. W. 965; Dependents of Shaw v. Harms Piano Co., 44 S. D. 346, 184 N. W. 204; Wilson v. Dakota Light & Power Co., 45 S. D. 175, 186 N. W. 828, and, if the circumstances surrounding the first appearance of the injury and the admissions of the doctors is sufficient in substance to support such findings, they must be sustained.

Assuming the truth of claimant's testimony, the first pain was felt suddenly, while claimant was in the performance of his regular duties pushing a loaded wheelbarrow up an inclined plank. No unusual strain is claimed, but, because the pain came on suddenly, it might be inferred that something had given way or broken in

the human anatomy, and that the muscular exertion of labor was the force which caused the break.

Many of the cases cited by appellant treat as accidents broken blood vessels occurring under the strain of labor, and claimant argues that, if a broken blood vessel may be the result of an accident, a distended blood vessel not broken may be. No doubt this is true, if the strain of the work distends the blood vessels, so as to result in injury. Whether a sudden distention of a blood vessel which does not break can result in injury we do not know. The evidence in this case does not warrant the assumption that that happened. The varicosity of the veins in this case is explained as due to the clogging of the femoral vein and a consequent burden upon the outer veins of the leg to carrying the blood theretofore carried by the femoral vein. It was not the strain that caused the distention of the veins, but the clot of blood. The medical authorities say labor will not cause a thrombus (clot of blood), but that it results from infection. Even the lay mind knows that a clot of blood will not form suddenly from a strain. This differs from a case of a bursted blood vessel resulting in slow paralysis. While the paralysis may progress slowly, the bursting of vein causing it is of a definite sudden occurrence, directly traceable to a strain.

[4] Claimant was doing his work in the usual manner, as intended, without unusual strain or mishap. Before he can recover it must appear that some mishap, some untoward and unexpected event, occurred without design; that some accidental injury was suffered, traceable to a definite time, place, and cause. Mattiesson & Hegeler Zinc Co. v. Industrial Board, 284 Ill. 378, 120 N. E 249; Taylor v. Swift & Co., 114 Kan. 431, 219 P. 516; Kutschmat v. Briggs Mfg. Co., 197 Mich. 146, 163 N. W. 933, L. R. A. 1918B, 1133. Any exertion which increases the heart action no doubt distends the veins and arteries in increased pulsations and consequent burden upon the viens, but this is usual, expected, and not injurious. Exercise is usually considered beneficial. Perhaps too much exercise or labor may be injurious and produce varicose or permanently distended veins, but such a condition must be classed as a disease—it cannot be classed as caused by accident.

The admissions of the doctors which, appellant says, support the findings of the board of arbitration and commission, are those

of Dr. Olson, where he says: "Physical exertion, even without external injury, might be sufficient to cause this clot of blood to form," and that "thrombus phlebitis might arise from physical exertion under the condition that claimant was working at that time," and of Dr. Rock, who says that in his opinion the strain of pushing a wheelbarrow full of cinders up a plank as described to him in this case might be · sufficient to cause varicose veins, or cause suffering that would develop them. In the testimony of both it may be noted that the doctors say that work *might* cause the injury, neither express an opinion that it did, although Dr. Rock was testifying for claimant. Nor is it plain what they mean, whether long-continued physical exertion and strain of pushing a wheelbarrow might cause the thrombus, or the instant case might. Such testimony is meaningless, where the recovery depends on the distinction. The most favorable to claimant is the testimony of Dr. Twining that he believed infection was the predisposing cause of the inflammation of the leg, and that the strain was the excitant cause; that, to the best of his judgment, in the physical condition that this man was at the time of his injury, the strain would be sufficient to cause the inflammation; and that he thought that was what caused it. Whether the doctor meant to distinguish between the inflammation attendant upon the ailment and the ailment itself does not appear. But Dr. Twining in the rehearing took the stand and retracted his earlier opinion above mentioned, saying:

"My testimony * * * was based on several factors which I, myself, believe are erroneous."

In the light of common knowledge and all the circumstances of this case, we do not feel that the findings of the board and of the commissioner can be sustained. If the ailment was thrombus phlebitis, and there is no evidence that it was anything else, it could not have been the result of an accident arising out of and in the course of the employment, but was a disease resulting from some cause other than an injury by accident.

The judgment and order of the circuit court are affirmed.

Note.—Reported in 207 N. W. 89. See, Headnote (1), American Key-Numbered Digest, Master and Servant, Key-No. 405(4), Workmen's Compensation Acts, C. J. Sec. 114 (Anno.); (2) Master and Servant, Key-No. 373, Workmen's Compensation Acts, C. J. Sec. 65; (3) Master and Servant, Key-No. 417(7), Workmen's Compen-

sation Acts, C. J. 127; (4) Master and Servant, Key-No. 371, Work-men's Compensation Acts, C. J. Sec. 65.