HADDORF, Respondent, v. JERAULD COUNTY, et al, Appellants.

(260 N. W. 404.)

(File No. 7763. Opinion filed May 4, 1935.)

*Tom Kirby,* of Sioux Falls, for Appellants.

*Charles R. Hatch,* of Wessington Springs, for Respondent.

ROBERTS, J. This is a proceeding brought under the Workmen's Compensation Law (Rev. Code 1919, § 9436 et seq., as amended) by Carl A. Haddorf against Jerauld county, his employer, and the Western Surety Company, insurer. Haddorf sustained an injury to his left hand while in the employment of the county.

The material and decisive inquiry is whether septicemia from which claimant suffered was caused by this injury. The industrial commissioner denied an award on the ground that disability was in fact due to a second accident and injury which did not occur in the course of employment.

On November 10, 1932, while engaged in laying a plank floor upon a highway bridge, Haddorf accidentally caught his left hand between a plank and another piece of timber. This occurred about 3 o'clock in the afternoon, but he continued to work the remainder of that day. The next day was a holiday, and no work was carried on. On Saturday, November 12, he was engaged in his usual work with the county. On the following Sunday morning, while claimant was shoeing a horse for a neighbor, he again injured his left hand. On Monday he was unable to work because the injured hand pained him severely. Claimant was treated by Dr. Foster, his family physician, until November 21, when he was removed to a hospital, where he remained for treatment until December 24, 1932.

These proceedings were commenced on August 23, 1933, by the filing of a petition by claimant with the industrial commissioner. From an adverse decision of the commissioner, claimant appealed to the circuit court of Jerauld county. Findings of fact and conclusions of law were made by the court to the effect that the septicemia resulted from the injury on November 10, and judgment was entered accordingly.

Testimony was given before the industrial commissioner both by claimant and medical experts. Claimant testified that, when the bridge plank fell upon his left hand, he was wearing two pairs of mittens; that there was no abrasion of the skin, but his hand was sore; that he could not use a crowbar in loosening gravel by reason of the jar against his hand; that on Sunday morning, when he was shoeing a horse for a neighbor, he pinched his left hand between the hoof and leg of the horse; and that early Monday morning he felt a throbbing and severe pain in his hand, and at about 9 o'clock he consulted Dr. Foster, who attended him from time to time until the following Monday, when he was taken to a hospital. On cross-examination he testified: "At the hospital at Mitchell I told the hospital authorities who were treating me what I thought happened to me and brought around the trouble. * * * I knew

the record they made was true. I did not report the accident which I received on the bridge to anybody until after I had been discharged from the Mitchell hospital." The hospital record contained this statement: "Patient states that seven days ago while shoeing a horse he pinched his finger on the left hand. The next day the hand was swollen and pained."

Dr. Foster testified that he made an examination of claimants hand on November 14, 1932; that there was a slight swelling but no abrasion of the skin; that the patient told him that he had a very severe pain in his hand; that at the time he found no "localized infection"; that an infection of the kind that he later found in claimant's fingers would take a longer time than twenty-four hours to develop. The doctor was asked this question: "Assuming that the plaintiff had his fingers pinched in shoeing the horses about ten o'clock on Sunday, such a pinch causing no abrasion or visible scratch on the skin, would you say that the condition you found in his fingers and hand on Monday morning about nine o'clock could have resulted from such injury?" and to which he replied: "Well, that was a thing that was puzzling me and I couldn't understand how it could be as bad as it apparently was in that short time. I doubt if the condition which I found in his fingers could have resulted in that time from the injury received in shoeing the horses." The physician testified that the infection was of the variety known as streptococcic or staphylococcic. These, it appears, are scientific terms of form of infection commonly known as blood poisoning. On cross-examination this witness testified:

"Q. The truth of the matter is, now knowing of both of these claimed injuries it would be impossible for a medical man to say which of them, if either, put the poison there? A. Yes, it would be a hard question to say.

"Q. It would be impossible? A. Yes, impossible. I couldn't tell now whether the infection came from the first claimed injury at the bridge, or the second, and I don't think anybody else could. My opinion was that this infection was a mixed infection. It was too virulent for a staphylococcic alone. If I had found an abrasion on the hand when I examined the patient on Monday morning, I would have thought the infection was very rapid in developing. It would probably indicate this, that there was a very virulent infection."

Dr. Gross, testifying in behalf of claimant, expressed the opinion, in reply to a hypothetical question setting forth the occurrence of the two injuries, that an infection could have developed without an abrasion of the skin; that, if there was an abrasion, an infection could have developed as early as 3 o'clock Monday morning as a result of the second injury, but that, in the absence of an abrasion, no infection would appear in that time; and that there could be no abrasion not visible to the naked eye.

The medical evidence was somewhat conflicting. Dr. Mullen, a witness for defendants, testified that in his opinion the pinch of the hand between the hoof and the leg of the horse caused an abrasion of the skin; that the break may not have been visible; that blood poisoning seldom develops from a bruise which causes no abrasion of the skin; and that in his opinion there was greater danger of infection from the second injury. He was asked the question: "From the facts as they have been put to you, is it possible for you to say with any degree of certainty as to which of these injuries probably caused the infection?" and he replied: "As the case has been presented the most logical answer, if we had to answer, would be that the second injury probably precipitated this infection and brought it on." He stated that such answer was made on the assumption that there was a microscopic break of the skin.

 The trier of facts is the board of arbitration or the industrial commissioner when there is a waiver of a right of hearing before the board, and an appeal before the courts must be upon the record so taken and preserved. Wieber v. England, 52 S. D. 72, 216 N. W. 850; Lang v. Jordan Stone Co., 61 S. D. 330, 249 N. W. 314. The burden of proving compensable injury by a preponderance of the evidence is cast upon the employee, and findings adverse to him cannot be disturbed on appeal, unless it appears upon the record that the employee has established the existence of facts by such a clear preponderance of the evidence that it was unreasonable to find adversely thereto. Edge v. City of Pierre, 59 S. D. 193, 239 N. W. 191.

 We do not have before us the question as to whether a finding by the industrial commissioner for claimant could be sustained under the evidence. But the question is whether claimant, having the burden, has so clearly established facts entitling him to

recovery that it was unreasonable to find otherwise. From the testimony of the physicians for claimant, the industrial commissioners could have reasonably concluded that it could not be determined whether the infection was caused by the injury sustained when claimant was in the course of his employment or by the second injury. It was within the province of the commissioner to determine the facts, and from all the evidence we conclude that claimant did not show that his disability was caused by the first claimed injury by such a clear perponderance of the evidence that it was unreasonable to find to the contrary.

The judgment of the circuit court appealed from is therefore reversed, and the cause is remanded to the circuit court, with directions to enter judgment affirming the decision of the industrial commissioner.

All the Judges concur.