DEAN v. BENTON HARBOR-ST. JOE. RAILWAY & LIGHT CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ELECTRIC-
ITY—INFERENCE FROM EVIDENCE.
    Where a lineman employed by an electric railway and
    light company died while working on a pole surrounded
    by wires carrying high voltage, and the evidence shows
    that the immediate cause of death was a rupture of the
    pulmonary artery, which was probably caused by high
    blood pressure induced by an electric shock, although no
    electric burns were found on the body, an award to his
    dependents under the workmen's compensation act was
    justified.[1]   CLARK, FELLOWS, and WIEST, JJ., dissenting.

Certiorari to Department of Labor and Industry.
Submitted January 9, 1925.   (Docket No. 64.)   De-
cided May 14, 1925.

-- Clara Dean and others presented their claim for
compensation against the Benton Harbor-St. Joe. Rail-
way & Light Company for the accidental death of their
decedent in defendant's employ.   From an order
awarding compensation, defendant and the London
Guaranty & Accident Company, Limited, insurer, bring
certiorari.   Affirmed.

    W. H. Andrews, for appellants.

    Charles W. Gore, for appellees.

    WIEST, J. (dissenting).   Milton Dean, a lineman in
the employ of the Benton Harbor-St. Joe. Railway &
Light Company, died, while working on a pole, amid
wires carrying electric current.   Certiorari to the
department of labor and industry presents the question

[1]Evidence, 22 C. J. § 27; Workmen's Compensation Acts, C. J.
§ 114.

of whether there was any evidence in support of the finding that his death was occasioned by an accident arising out of and in the course of his employment. An examination of his body disclosed no burn or other evidence of electric contact, and an autopsy showed the immediate cause of death to have been a ruptured aneurism of a pulmonary artery, the artery having become thickened, indurated and scleroted. The rupture was the size of an ordinary lead pencil and caused almost instant death. The case was presented to the commission on the theory that Mr. Dean received an electric shock, which stimulated his heart action, with consequent increased blood pressure in the artery, resulting in the rupture. About an hour before his death Mr. Dean assisted in raising a pole, weighing 500 or 600 pounds, and for a space of a minute or two the weight of one end rested upon his shoulder. No apparent discomfort was occasioned by this incident.

The commission stated in the findings:

"With no direct evidence before the commission that this man received an electrical shock which resulted in the bursting of the diseased artery, can the commission say from all the surrounding facts in the case and the evidence presented that an electric shock was received by decedent? The electric current is invisible and the indications of shock to a body not always satisfactory, so far as direct evidence goes. In this case the applicants' decedent climbed the pole, had been doing heavy work, was surrounded by wires carrying a voltage sufficient to cause death, it was possible for an electric shock to cause death without leaving any visible marks and we think the only reasonable conclusion that can be arrived at is that deceased lifted a heavy pole and so over-exerted himself that it increased the tension of his blood vessels and with the exertion of climbing this pole, which was not an accident, was in such a condition that when he received an electric shock it caused a rupture of the aneurism in his pulmonary artery and resulted

in his death.    While the electric current cannot be seen passing from the wire to the body the stage was all set for what we believe happened, the sustaining of an electric shock by deceased."

It is insisted the commission in the findings indulged in mere surmise or guess and had no facts from which any such inference could legitimately be drawn.    An injury to be accidental must be identified with a definite occurrence.    The evidence falls short of showing any accident.    Mr. Dean was suffering from a diseased condition of an artery.    If he received an electric shock, stimulating his heart action, and this brought increased pressure, causing rupture of the artery, then he met with an accident.    But did he receive an electric shock?    Decision turns upon this question of fact.    The commission found, by inference from known facts, that he did receive an electric shock, so we narrow to the question of whether the inference drawn was legally permissible from the facts most favorable to plaintiff.    The exertion in holding a pole about an hour before he died was not a cause of his death, and so established conclusively by the medical testimony.    No claim is made that any exertion in his work at the time of his death caused the artery to rupture.    There is no direct evidence that he received an electric shock.    It is true he was working near wires, where, had he touched two at the same time, he might have received an electric shock, but there is no evidence that he so came into contact with wires.

It is clear that he was not killed by an electric shock; in fact, such is not the claim.    The claim is more in the nature of confession and avoidance; confession of death from a ruptured artery, and avoidance of the natural conclusion from such known cause, by claim of an electric shock sufficient to have stimulated the heart action with consequent increased pressure of blood in the artery with resultant rupture.

What killed Mr. Dean? A ruptured artery. What caused the rupture? A diseased condition of the artery. Was a shock necessary to occasion the rupture? No, it might have happened any moment, without shock or strain. Was the rupture accelerated by an electric shock? Nobody knows. May it be inferred there was an electric shock and then further inferred, upon the first inference, that the shock hastened the fatal culmination of the disease of the artery?

The absence of electric burns, while not conclusive of no electric shock, militates against the inference that he did receive an electric shock. *Byerly* v. *Consolidated Light, Power & Ice Co.*, 130 Mo. App. 593 (109 S. W. 1065). It is just as consistent with probability to infer, guess or speculate, that the death of Mr. Dean was occasioned by the ruptured artery without an electric shock as with such a shock; for it might as well have happened without a shock as with one. To find there was an electric shock requires piecing out the known facts with mere conjecture or supposition, wholly unnecessary, under the known facts, to locate the cause of death. We know the cause of his death; we know an electric shock was not necessary to cause rupture of the diseased artery; we do not know that he received an electric shock, and we are barred, as was the commission, from drawing the inference of death occasioned by an electric shock, because under the evidence most favorable to plaintiff it is just as consistent to draw the inference that his death was but the culmination of his disease.

See *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich. 130, and cases there cited.

In *Sanderson's Case*, 224 Mass. 558 (113 N. E. 355), death was occasioned by hemorrhage in the lateral and the third and fourth ventricles of the brain. Deceased was driving along a country highway, with

horse and wagon, and was found unconscious in the road with a cut over the right eye extending through the scalp to the skull, causing a slight hemorrhage from the periosteum, and there was a contused surface around the cut for about three inches.    Reviewing and reversing an award, the court stated:

"The dependent must go further than simply to show a state of facts which is as equally consistent with no right to compensation as it is with such right. They can no more prevail if factors necessary to support the claim are left to surmise, conjecture, guess or speculation, than can a plaintiff in the ordinary action in tort or contract.    *   *   *    While there was ample evidence from which it could have been found that, so far as could be ascertained, the employee was in a normal and healthy condition, without any impairment of his arteries, or disease of any of the organs of his body, and that it was unusual for a man of his age to suffer a cerebral hemorrhage unaccompanied by some physical injury, still there seems to be an entire absence of evidence to show that the hemorrhage was caused by the fall from the wagon."

In *Welsch* v. *Charles Frusch Light & Power Co.,* 197 Iowa, 1012 (193 N. W. 427), cited by the commission, there was evidence of electric burns *and no other cause of death appeared.*    The fact of no other cause of death than by electricity appears in all the cases authorizing an inference of death by electricity.    This is made plain in Curtis, Law of Electricity, § 618, quoted from in the Iowa case, and is illuminated by the cases cited by Mr. Curtis in support of his text.

To sustain an award, a personal injury, arising out of and in the course of the employment, must be established by direct evidence or the existence of circumstances justifying the inference that the injury was occasioned by an accident, and exclude an equally consistent idea that it was not so caused.    The direct evidence established a causal connection between the disease and death.    The commission to justify an

award had to find an ultimate fact, in this instance not susceptible of direct proof. This however accorded the commission no right to make an arbitrary choice between equally probable but unproved conclusions. If this were permissible, it would require the defendant, in order to prevent the commission from making it the victim of conjecture, assume the burden of showing there was no electric shock experienced by the deceased. The ultimate inference drawn by the commission rests upon no support beyond inference that some extra exertion of the heart increased the blood pressure in the artery. The rupture was rendered imminent by the diseased condition of the artery, and needed no pressure, resulting from stimulation, to break open, might have occurred while Mr. Dean was about ordinary work, or even in bed at rest, and in fact did break while he was in the act of drawing two small bolts up with a rope. The inference that the rupture was occasioned by an electric shock offends against the rule forbidding an inference to be based on an inference. The law will not admit of such a method of determining issues in a proceeding governed by rules of evidence. The known facts in the case do not legitimately admit of the finding of the commission.

The award should be vacated.

CLARK and FELLOWS, JJ., concurred with WIEST, J.

SHARPE, J. There is proof in the record which justified the commission in finding:

1. That Dean's death was caused by the rupture of an artery in his body a few inches from his heart.

2. That prior thereto he had been afflicted with arterio-sclerosis, with lime deposit through the coats of the artery; in other words, what is commonly spoken of as a hardened condition of the arteries. Blood vessels in this condition are "more liable to rupture."

3. That the exertion to which he was subjected a short time before his death by lifting the heavy pole would tend to weaken the wall of the artery and render it more liable to burst open.  The rupture "generally takes place at the time of the exertion," and, ordinarily, is due to increased tension in the blood vessels.  A slight electric shock would produce such tension.

4.  A few seconds before his death, deceased, while working on the pole, had his right foot about 3½ inches from the feed wire, carrying 500 volts, and his left hip was about 5 inches from another wire, carrying 2,300 volts.  He was then pulling up lug screws on a line.  This would necessitate some movement of his arms, if not of his entire body, but little exertion.

5. While so engaged, and when the head of the witness Baum, who had been working above him on the pole and was passing him on the way down, got "even with his feet," Baum noticed that "he quit pulling up the hand line," and, looking up, saw "his head coming down just as I looked."  While he did not see that any part of the body of deceased came in contact with the wires, it is apparent that he was not looking at him at the time deceased collapsed.  A witness who observed deceased immediately after his collapse testified:

"Well, he had his feet on the first lower cross-arm, his right leg was over this large feed wire and spread like that (indicating) on each side of the pole and his right foot over the feed wire on the outside of it.  Belt was above the second cross-arm and he was hanging down there supported by another man by the shoulders.

"Q. Were his shoes or his leg touching the feed wire?

"A. Lay right on the feed wire."

6. That deceased might have received a shock from

these wires without the contact leaving any visible marks upon his person.

7. At the time of his death deceased was 41 years of age, had never complained of heart trouble, and was apparently in the enjoyment of good health.

This proof and the inferences that may fairly and reasonably be drawn therefrom, in my opinion, sustain the finding of the commission that the bursting of the blood vessel was caused by an electric shock. The two doctors present when the *post-mortem* was performed and the one who performed it saw no visible signs of an electric shock. With the care with which experienced surgeons usually weigh their words when testifying as experts, they were unwilling to express an opinion as to the immediate cause of the bursting of the blood vessel, while admitting that a shock might have caused it. The condition in which they found the artery led them to say that the rupture might have resulted without any shock. I think their testimony goes no further than to say that a person with arteries such as deceased had might have collapsed at any moment without any other apparent reason therefor. In such a case, we can but weigh the probabilities. The deceased met his death while working in close proximity to electric wires, contact with which ordinarily would produce death. In view of his ability to stand the strain of lifting the heavy pole, his act in climbing the pole on which he was working, which required much exertion, the character of the work he was doing, simply pulling up a rope with no particular weight attached to it, all without complaint on his part, it cannot well be said as a matter of law that his collapse was due to his physical condition. Had the facts here presented been submitted in the trial of an action at law, I am impressed that we would say it should have been the duty of the court to submit to the jury the question

as to whether the bursting of the artery was caused by an electric shock.

"A presumption is a negative or affirmative inference as to the existence of a fact which probable reasoning and common sense draw from proved surrounding facts and circumstances." *Kimber* v. *Consumers Power Co.*, 229 Mich. 663, 669.

The proof is clear that an electric shock would cause the rupture of the blood vessel. If an inference may fairly and reasonably be drawn from the proofs that the deceased received such a shock, to hold that it was the immediate cause of his death is not permitting an inference on an inference. If he received the shock, the cause of death is accounted for without inference.

The award is affirmed.

McDONALD, C. J., and BIRD, MOORE, and STEERE, JJ., concurred with SHARPE, J.