EDGE, Respondent, v. CITY OF PIERRE, et al, Appellants.

(239 N. W. 191.)

(File No. 7164.   Opinion filed November 10, 1931.)

194

F. A. McKennett, of St. Paul, Minn., and Chas. E. DeLand, City Attorney, of Pierre, for Appellants.

Will G. Robinson, State's Attorney, and Johnson & Johnson, all of Pierre, for Respondent.

CAMPBELL, J. Pirl Edge in October, 1926, was an employee of the city of Pierre (one of the defendants herein), and the Workmen's Compensation Law of this state (Rev. Code 1919, § 9436 et seq., as amended) was applicable to such employment. The City of Pierre had insured its liability to its employees under that law with Zurich General Accident & Liability Insurance Company (the other defendant herein). On October 16, 1926, Edge suffered an accidental injury, arising out of and in the course of his employment, by the dropping of a piece of heavy cast iron water pipe upon his leg. As a result of this accident his leg was broken and he was confined for some time in a hospital, whence he was discharged as a normal recovery according to the hospital records in March, 1927. He was paid compensation for such accidental injury by defendant insurance company in the amount of $281.60, covering a period of twenty-one weeks and two days after the date of the injury, in addition to the sum of $121.85 for medical, surgical, and hospital service, and accepted and receipted for such amounts as full compensation for such accidental injury, and a memorandum of settlement thereof was filed and approved by

the industrial commissioner on May 9, 1927. In addition to such statutory compensation, the defendant city voluntarily and gratuitously paid to Edge between November 12, 1926, and February 21, 1927, the further sum of $150. Edge returned to work for the city on May 3, 1927. He continued in employment for about ten days, when he stopped work complaining of not feeling well, although he drew wages until May 24, 1927. June 8, 1927, Edge died. It is conceded by all parties to this record that the immediate cause of his death was disease, and that the particular disease was either encephalitis or cerebrospinal meningitis. It is undisputed upon the record that both of such diseases are caused by a specific bacillus, and that the usual period of incubation is from one to seven days, but may be as long as three weeks.

Thereafter, the present claimant herein, Charlotte Edge, widow of said employee, made claim for compensation upon the theory that the death of her husband was a result of the accidental injury suffered in October, 1926. The matter came on for hearing before the industrial commissioner on November 15, 1927, a board of arbitration being waived, and, after such hearing, the industrial commissioner made findings and rendered his decision against the allowance of compensation as follows:

"The testimony shows that Pirl Edge, deceased husband of the claimant, had an accident on October 16, 1926, resulting in an injury, which arose out of and in the course of his employment, whereby the right leg was broken below the knee. The records show that said Pirl Edge has received for compensation in the sum of two hundred eighty-one dollars and sixty cents ($281.60) which is compensation based on fifty-five per cent of said Pirl Edge's average weekly earnings for a period of twenty-one and one-third weeks, covering total incapacity account of said injury.

"It further appears from the testimony that said Pirl Edge had some internal disorder that is unascertained.

"It further appears that said Pirl Edge died from either encephalitis or cerebro-spinal-meningitis, and that these diseases are both germ diseases, and that said germs, in both instances, have been isolated, and the incubation period is ordinarily short, and that there was no ascertained connection between the original injury of October 16, 1926, and the death of said Pirl Edge on June 8, 1927.

"Decision.

"The claim for compensation is denied, there being no definite showing that the injury of October 16, 1926, was the proximate cause of the death of Pirl Edge on June 8, 1927."

From this adverse decision of the industrial commissioner the claimant, Charlotte . Edge, appealed to the circuit court of Hughes county, S. D., as a result of which appeal the cause was remanded to the industrial commissioner for further hearing and proceedings. Thereafter additional testimony was heard and considered by the industrial commission (a board of arbitration being again waived), and the industrial commissioner made new and additional findings of fact and conclusions, and again rendered a decision adverse to the claimant, the additional findings and conclusions being as follows:

"Findings of Fact.

"I.   That on the 16th day of October, 1926, Pirl Edge, the deceased, was the husband of Charlotte Edge, claimant in these proceedings, and was in the employ of the City of Pierre, a municipal corporation of the state of South Dakota, and had been so employed for the space of approximately four months prior thereto.

"II.   That at said time and place the said Pirl Edge was employed by said City of Pierre as a laborer with the Water Departmen operated by said City of Pierre, under the direction of said City of Pierre's agent and engaged in the unloading of water mains for said department.

"III.   That it was part of said Pirl Edge's duties and employment to assist the other employees of the said City of Pierre in unloading water mains and incidentally to assist in any other work he was directed to by said City of Pierre or its agents to perform.

"IV.   That on the 16th day of October, 1926, while thus employed by the City of Pierre, he was accidentally injured by a piece of cast iron water main ten inches in diameter and approximately eight feet long, weighing between 400 and 600 pounds, accidentally falling upon his right leg, breaking the tibia and fibula in the middle third, and said injury incapacitated him from work for a period from October 6, 1926, to March 15, 1927.

"V. That said Pirl Edge was employed by said city of Pierre at the time of said injury at the rate of twenty-four ($24.00) dollars per week.

"VI. That notice of said injury was given to the industrial commissioner on the 3rd day of November, 1926, by the Zurich Accident & Liability Insurance Company, which notice had been made out by said insurance company's agent, G. L. Erickson, at Pierre, Hughes county, South Dakota, on October 20, 1926.

"VII. That neither claimant or defendants filed with the industrial commissioner any appointment of a member of the board of arbitration prior to the hearing on said matter.

"VIII. That the City of Pierre had insured the payment of compensation to its employes as required by statute with the Zurich Accident & Liability Insurance Company and same was in full force at the time of said accident.

"IX. That compensation was paid to the deceased, Pirl Edge, in the amount of two hundred eighty-one and 60/100 dollars ($281.60), and in addition thereto, medical, surgical and hospital services in the amount of one hundred twenty-one and 85/100 ($121.85) dollars, and accepted by him in full compensation for said injury.

"X. That at a period several months prior to his death, claimant made a complete normal recovery following the accident of October 16, 1926.

"XI. That a memorandum of settlement was drawn and signed by the employer and the employee for the sum of two hundred eighty-one and 60/100 ($281.60) dollars for said employee's incapacity to earn wages and in addition thereto one hundred twenty-one and 85/100 ($121.85) dollars for medical, surgical and hospital services, was paid by the defendants, and that said memorandum of settlement was filed and approved by the industrial commissioner May 9, 1927.

"XII. That the deceased, Pirl Edge, died on June 8, 1927, of either encephalitis or cerebro-spinal-meningitis.

"XIII. That said encephalitis or cerebro-spinal- meningitis was not accelerated or aggravated by the accidental injury of October 16, 1926.

"XIV. That said injury of October 16, 1926, did not cause the said Pirl Edge to become weakened physically and mentally, and did not cause said Pirl Edge to be more susceptible to germ disease.

"XV. That the death of said Pirl Edge was not caused by the said injury of October 16, 1926, and said injury did not contribute to or hasten the death of said Pirl Edge.

### "Conclusions.

"Therefore, the industrial commissioner of the state of South Dakota concludes:

"I. That on the 16th day of October, 1926, the deceased employe, Pirl Edge, was an employe of the City of Pierre, a municipal corporation of the state of South Dakota, and while so employed was injured by an accident arising out of and in the course of his regular employment and by such injury temporarily incapacitated from earning full wages for a period of twenty-one and one-third weeks.

"II. That the defendant employer had knowledge of said injury at the time same occurred.

"III. That claimant and defendants waived a hearing before a board of arbitration and submitted this matter to the industrial commissioner of the state of South Dakota.

"IV. That the said Pirl Edge was paid in full for all compensation due him from defendants' under the Workmen's Compensation Law of the state of South Dakota for the injury sustained by him on October 16, 1926.

"V. That all medical, surgical and hospital services supplied the said Pirl Edge on account of his injury of October 16, 1926, by the defendants, was paid in full.

"VI. That the claimant is not entitled to any compensation under the Workmen's Compensation Law of the state of South Dakota for the death of said Pirl Edge.

"VII. That the defendants are entitled to an order denying said claim and to their costs in this action as provided by law, less the costs of claimant's appeal from the award in this matter."

Claimant again appealed to the circuit court of Hughes county, and the court held that certain of the commissioner's findings of fact were not supported by competent evidence, and again reversed the decision of the commissioner, and entered judgment again remanding the matter to the commissioner for further hearing. From this judgment of the circuit court defendants have appealed to this court. On this appeal the state's attorney of Hughes county is associated in behalf of claimant (respondent here) with her original counsel, pursuant to claimant's request, under the provisions of section 9477, Rev. Code 1919, as amended by chapter 364, Laws 1919.

Applicable law requisite for the determination of this appeal seems not difficult of ascertainment, and may be set forth as follows:

■ First, under our Workmen's Compensation Law disability or death resulting from disease is not compensable, unless there is a direct chain of causation between such disease and a compensable industrial accident. The law provides for "compensation for personal injury or death by accident arising out of and in the course of employment." Sections 9437, 9440, Rev. Code 1919. And specifically defines that injury "shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except as it shall result from the injury." Section 9490, Rev. Code 1919. Before compensation can be allowed for disability or death by disease, it must be established that the disease was proximately caused by the accident. Vodopich v. Trojan Mining Co. (1921), 43 S. D. 540, 180 N. W. 965; Frank v. Chicago, M. & St. P. Ry. Co. (1926), 49 S. D. 312, 207 N. W. 89.

■ ■ Second, upon application for compensation under the act, the burden of proof is upon the claimant to establish by a preponderance of the evidence all material facts necessary to make out a prima facie case for recovery, including in the present case the essential fact that the disease which was admittedly the immediate cause of death on June 8, 1927, was proximately caused by the industrial accident of October 16, 1926. Thomas v. State Workmen's Insurance Fund (1924), 280 Pa. 331, 124 A. 499; Desrochers v. Atwood-Crawford Co. (1925), 47 R. I. 116, 131 A. 48; Haskell & Barker Car Co. v. Brown (1917), 67 Ind. App.

178, 117 N. E. 555; Bucyrus Co. v. Townsend (1917), 65 Ind. App. 687, 117 N. E. 656; United States Fuel Co. v. Industrial Commission (1923), 310 Ill. 85, 141 N. E. 401; Hogan v. Twin City Amusement Trust Estate (1923), 155 Minn. 199, 193 N. W. 122; Tazewell Coal Co. v. Industrial Commission (1924), 312 Ill. 145, 143 N. E. 406. And this burden is not sustained by merely showing a state of facts from which it may be conjectured that perhaps the accident contributed to the disease. Claimant must introduce credible evidence from which "the only fair inference to be drawn was that the accident proximately contributed to * * * death [immediately caused by disease]." Carr v. Donner Steel Co. (1923), 207 App. Div. 3, 201 N. Y. S. 604, 606. See also Hargreave v. Haughhead Coal Co., Ltd., [1912] Law Rep. Appeal Cas. 319; Brown v. George Kent, Ltd., [1913] Law Rep. 3 K. B. 624; Newcomb v. Albertson (1914), 85 N. J. Law 435, 89 A. 928; Lundy v. George Brown Co. (1919), 93 N. J. Law 469, 108 A. 252.

█ Third, on an appeal from a decision of the industrial commissioner, the circuit court sits as a reviewing court only upon the record made before the commissioner. The trial forum for ascertaining material facts is the board of arbitration or the industrial commissioner when such board is waived, and facts so found must be accepted by the reviewing court, unless so palpably erroneous upon the record as to be unreasonable; such findings standing substantially upon the same plane as the verdict of a jury. Wieber v. England (1927), 52 S. D. 72, 216 N. W. 850. Upon a question of fact which might conceivably be decided either way on the record, the reviewing court has no right to substitute its view as to the existence or nonexistence of such fact for the view of the industrial commissioner. A decision of the industrial commissioner in favor of a claimant must be supported by affirmatively finding the existence of all material facts as to which claimant has the burden of proof. Such findings are not open to question by the reviewing court if the record exhibits any substantial credible evidence in support thereof. Day v. Sioux Falls Fruit Co. (1920), 43 S. D. 65, 177 N. W. 816; Dependents of Shaw v. Harms Piano Co. (1921), 44 S. D. 346, 184 N. W. 204; Wakefield v. Warren-Lamb Lbr. Co. (1923), 46 S. D. 510, 194 N. W. 835; Frank v. Chicago, M. & St. P. Ry. Co. (1926), 49 S. D. 312, 207 N. W. 89; Mellquist v. Dakota Printing Co. (1927), 51 S. D. 359, 213 N. W.

947; Wieber v. England (1927), 52 S. D. 72, 216 N. W. 850; Leach v. J. I. Case Threshing Mach. Co. (1928), 53 S. D. 13, 219 N. W. 884.

■ When the decision of the industrial commissioner is adverse to the claimant, it is not necessary affirmatively to find the existence of any facts to support the same. The claimant having the burden of proving the existence of material facts in order to prevail, if, to the mind of the trier of the facts, claimant has not sustained that burden, the decision must be rendered against the claimant. It is usual, but by no means necessary, to support a decision adverse to the claimant by a finding affirmative in form of the converse of the facts as to which claimant having the burden of proof has failed to sustain it. Concerning such findings adverse to the party having the burden of proof, the same language is frequently used by the courts; namely, that the finding must be sustained, if there is any substantial credible evidence in support thereof. This, however, is not strictly accurate. By way of illustration assume the matter of employment to be in dispute. Claimant, of course, has the burden of proving affirmatively the existence of the employment at the time of the accident. Suppose that no evidence whatever was offered by either party as to the existence or nonexistence of such employment. Claimant could not prevail, and a decision adverse to claimant would be amply supported on this point by a finding to the effect that claimant had failed to establish the existence of employment. However, it is the customary form, instead of finding negatively that the fact has not been proved to exist, to find conversely in the affirmative; that is, to find as a fact that the employment did not exist. There being no evidence whatsoever in the record relating to the existence or nonexistence of employment, it could not properly be said that there was substantial and credible evidence to support the finding (affirmative in form) that employment did not exist. Nevertheless, the finding and decision ought to be supported, for the finding, regardless of its form, in substance amounts merely to a finding, proper upon a record such as we have assumed, that claimant had failed to sustain the burden of proving that employment did exist. It is therefore more accurate in cases where findings, regardless of their form, are adverse to the party having the burden of proof to say that such findings cannot be disturbed on appeal, excepting only

where it appears upon the record that the party having the burden of affirmatively proving the existence of material facts has established the existence thereof by such a clear preponderance of evidence that it was unreasonable for the trier of facts to fail affirmatively to find such existence. Cf. Vodopich v. Trojan Mining Co., (1921), 43 S. D. 540, 180 N. W. 965; Gerue v. Medford Bridge Co. ( Wis. 1931), 236 N. W. 528; Jones v. Excelsior Laundry Co. (Minn. 1931), 237 N. W. 419.

We turn now to the application of the law to the facts involved in this appeal. The sole question of ultimate fact in dispute between the parties is, "Was the accident of October 16, 1926, the proximate cause of the disease whereof Edge died on June 8, 1927?" Upon the first hearing before the industrial commissioner he found adversely to claimant on this issue by the following language: " * * * That there was no ascertained connection between the original injury of October 6, 1926, and the death of said Pirl Edge on June 8, 1927." The language is unequivocal. The commissioner thereby meant and intended to find, and did find, that claimant had failed to sustain the burden resting upon her of establishing by a preponderance of the evidence a causal connection between the accident and the death. This was not a conclusion, but was a specific finding with reference to the only ultimate fact in dispute. If the finding is valid upon the record, it was ample, and still is, to require a decision adverse to claimant. A decision in favor of claimant would necessarily demand for its support an affirmative finding that the injury of October 16, 1926, was the proximate cause of the disease which immediately caused the death. The finding of the commissioner that there was no ascertained connection between the two should be accepted as a verity upon appeal, unless, upon the entire record, the evidence shows by such a clear preponderance that it is unreasonable to fail so to find that the injury did proximately cause the disease. The learned circuit judge upon the first appeal appears to have considered this finding of ultimate fact as a mere conclusion and remanded the cause for further findings. Thereupon additional testimony was taken before the industrial commissioner, and, in an apparent effort to conform to the ideas and theories of the circuit judge, the industrial commissioner (although still very clearly of the same opinion as to the facts) proceeded to make numerous additional findings

including therein findings upon several matters that were merely evidentiary as distinguished from ultimate facts. Upon such evidentiary facts it was of course entirely unnecessary to find at all. The second and additional findings are those hereinbefore set out numbered from I to XV, inclusive. Findings X, XIII, XIV, and XV are here repeated for convenience as follows:

"X. That at a period several months prior to his death, claimant made a complete normal recovery following the accident of October 16, 1926."

"XIII. That said encephalitis or cerebro-spinal-meningitis was not accelerated or aggravated by the accidental injury of October 16, 1926.

"XIV. That said injury of October 16, 1926, did not cause the said Pirl Edge to become weakened physically and mentally, and did not cause said Pirl Edge to be more susceptible to germ disease.

"XV. That the death of said Pirl Edge was not caused by the said injury of October 16, 1926, and said injury did not contribute to or hasten the death of said Pirl Edge."

On the second appeal to the circuit court (whence the present appeal to this court originates) the learned trial judge held that findings Nos. X and XIV, above quoted, were not supported by the evidence. He likewise held that findings Nos. XIII and XV were in the nature of conclusions, and were so closely related to findings Nos. X and XIV that, if findings Nos. X and XIV were not supported by the evidence, then it followed that findings Nos. XIII and XV likewise failed of support.

█ Findings Nos. X and XIV go merely to evidentiary facts and not to ultimate facts. So far as concerns those two findings, it might be admitted that they were erroneous and unsupported, and even that the facts were precisely antithetical, but such admissions, without more, would not entitle claimant to prevail in this case. It might be conceded that Edge did not several months prior to his death make a complete and normal recovery from the accident of October 16. It might be conceded that Edge never made a complete recovery from the accident of October 16. It might be conceded that the accident of October 16 did cause Edge to become and to continue weakened physically and men-

tally, and did cause Edge to become and continue more susceptible than previously he had been to any and all germ diseases. Nevertheless the admission of those facts would not justify a decision for the claimant. Claimant would still face the necessity of proving by a fair preponderance of the evidence that, by reason of said failure of complete recovery, or by reason of said weakened physical and mental condition and increased susceptibility to germ disease or by reason of any other matters whatsoever, the injury of October 16 did actually, in point of fact, proximately cause Edge to acquire the particular germ disease whereof he died, and that but for such accident of October 16 he would not have acquired such germ disease. That, to quote the New York court, "is a medical question, which is usually resolved by obtaining a medical opinion ample to sustain the findings of the Industrial Board that the accident was a proximate cause." Carr v. Donner Steel Co., supra, 207 App. Div. 3, 201 N. Y. S. 604, 605. Findings XIII and XV are by no means conclusions, but are express findings adverse to the claimant upon the only ultimate fact in dispute. Those findings are ample support for the decision adverse to claimant. Those findings cannot be set aside and held for naught merely because of the fact (if it be conceded to be a fact, and we need not trouble in this case to determine whether it is or not) that there is no substantial evidence to support findings X and XIV. The learned trial judge was not at liberty to substitute his opinion for the opinion of the industrial commissioner with reference to the subject-matter embraced in findings XIII and XV if, upon all the evidence, reasonable minds could conceivably differ with reference thereto. Those findings being sufficient to support the decision of the industrial commissioner, it was the duty of the circuit judge to affirm such decision, unless it appeared from all the evidence that such findings were unreasonable and without any substantial support, and unless the clear preponderance of the evidence established that the accident of October 16 was in fact the proximate cause of the disease immediately causing the death.

On this point we have examined the evidence as presented by the briefs (and that is all that is or can be before us) with some care. Testimony was given, both by lay witnesses and medical experts. None of the lay witnesses, of course, undertook to express any opinion as to whether the accident of October 16 in fact

caused the disease of which Edge died. Their testimony was limited to endeavoring to describe his condition, appearance, and conduct as they observed it. Assuming the view of this testimony most favorable to claimant, the most that can be said is that, considered alone, it perhaps establishes a state of facts from which it might not be unreasonable for the trier of facts to infer (if he saw fit to do so) that the accident proximately caused the disease. There is testimony of such lay witnesses in behalf of claimant tending to show that the broken leg which Edge received by the accident of October 16, and which was the only injury taken into account at the time of his hospitalization and treatment, was not as a matter of fact the only physical detriment suffered by him as a result of the accident; that in addition thereto he received some sort of injury to his back; that, although his broken leg may have been fully mended, he continued to suffer to some extent from the injury to his back; that he was mentally and physically weakened thereby; that he did not sleep well nor eat well; that he lost weight and did not regain his normal strength. It seems to us too clear for argument that, while those and similar facts might possibly justify the trier of facts in making the inference that the accident proximately caused the ultimate disease (though we do not undertake to declare that they would justify such inference), certainly they do not so necessitate the inference that it should be held unreasonable to fail to make it. This is particularly true, in view of the testimony of the medical men.

Dr. Robbins, testifying in behalf of the claimant, had seen and attended Edge for three or four days immediately following the accident on October 16. He was called in consultation by the attending physician, Dr. Martens, a few hours before the death of Edge. At that time it was his opinion that there were two possible diagnoses, either cerebrospinal meningitis or encephalitis; his opinion being that the condition was encephalitis. He examined the back of the patient and found nothing abnormal. He testified that in his opinion there was no connection between the accident of October 16 and the death of Edge. Dr. Martens testified that he was called to see Edge the day before his death; that he examined him and diagnosed his ailment as encephalitis; that he could not find that the accident of October 16 had anything to do with the man's death. He further testified that in his opinion a de-

rangement of the spinal column causing pressure on the nerves thereof would not in any manner cause encephalitis, whereof the patient died. Dr. Northrup testified that he examined Edge about five hours before his death; that his diagnosis was cerebrospinal meningitis, although the case might have been encephalitis; that he could not see any connection between the accident of October 16 and the cause of death; that a man in the prime of health and life might contract either of the diseases mentioned, although there was a greater likelihood of so doing in the case of a person in poor health, and the doctor specifically said upon the second hearing, when called as a witness for the claimant, "I do not think that at the time I saw him, that the thing he was suffering with at that time could be due to the injury." He further said that if, as a result of the accident, Edge was in poor health, had lost flesh, etc., his resistance and vital force would be thereby lessened, and that such situation "would have a tendency to make more probable the disease which caused his death." He reiterated, however, that he could see no connection in the particular case. Dr. Stout testified that the germs which produced either encephalitis or cerebrospinal meningitis could not develop from any injury within the body, but that they come from an outside source, and are specific organisms, and that he did not think there was any connection between the injuries of October 16 and the death of Edge. Dr. Tjaden, a chiropractor whom Edge consulted on June 3, testified that, according to the theory and practice of his profession, all ailments of every nature are caused by a subluxation of the spine; that the disease of which Edge died, in his opinion, was cerebrospinal meningitis; that the cause of cerebrospinal. meningitis according to the theory of his profession is pressure on the meninges of the spine as a result of vertebral displacement, and that, in his opinion, it would be possible that the death of Edge was caused as the result of a spinal displacement suffered at the time of the accident of October 16.

We need not undertake to determine whether upon all this evidence a finding that the accident of October 16 was the proximate cause of the death of Edge might have been sustained if the industrial commissioner had made it. The industrial commissioner did not so find, but very definitely found to the contrary. Upon a consideration of the evidence as a whole, it is obvious such evi-

dence does not so clearly preponderate against his findings as to render the same unreasonable, and that is as far as is either necessary or permissible for us to go in this case.

It follows that the findings of the industrial commissioner should stand. The findings are ample to support the commissioner's decision and permit no other decision.

The judgment of the circuit court here appealed from is therefore reversed, and the cause is remanded to the circuit court, with directions to enter a judgment affirming the decision of the industrial commissioner.

POLLEY, P. J., and WARREN and RUDOLPH, JJ., concur.
ROBERTS, J., not participating.