BLACKFOOT COAL & LAND CORPORATION *v.* COOPER.

[No. 18,064. Filed December 21, 1950. Rehearing denied January 26, 1951. Transfer denied May 22, 1951.]

314

*Crawford & Crawford,* of Terre Haute, for appellant.

*Paul P. Boyle,* of Terre Haute, for appellee.

ROYSE, J.—This is an appeal from an award granting appellee compensation for temporary disability under the Indiana Workmen's Compensation Act. The portion of the award pertinent to a determination of the questions here presented is as follows:

"The Full Industrial Board of Indiana having heard the argument of counsel and reviewed the evidence in this cause and now being duly advised in the premises finds that on March 21, 1947 the plaintiff was in the employment of the defendant at an average weekly wage in excess of $36.50 and that on said date plaintiff received personal injuries by an accident arising out of. and in the course of his employment, of which the defendant had knowledge and furnished medical treatment and supplies at the time.

"It is further found that at the time of the accident plaintiff was afflicted with cancer of the right testicle and that the accidental injury aggravated this condition.

"It is further found that on account of said accidental injury plaintiff was temporarily totally disabled from May 12, 1947 to February 10, 1949."

The appellant here contends that the award is contrary to law for the reason that there is no direct evidence, and no basis in the evidence for a reasonable inference to support the finding of fact that "at the time of the accident plaintiff was afflicted with cancer of the right testicle, and the accidental injury aggravated this condition"; and further, that there is no substantial factual basis in the evidence to support the award of compensation for the period of disability due to operations for a duodenal ulcer.

In support of these contentions appellant says the only evidence in the record which suggests the finding that the injury aggravated cancer is that of appellee's physician, Dr. Welborn, who testified that the accidental injury "might have" aggravated the cancer or that it "could have" aggravated it; but the same witness further testified definitely, when pressed for a statement that it did aggravate the cancer, "I can say that it could have aggravated it, but I can't testify that it did." It further contends the record is devoid of proof of any other circumstances which, when considered in connection with Dr. Welborn's statement that the injury could have aggravated cancer, would give that evidence probative force or value. Finally, it is contended the only evidence to connect the ulcer with the injury is the opinion of Dr. Welborn that appellee worried a great deal, and worry is a big factor in the origin and development of duodenal ulcer.

The questions presented require a consideration of the evidence most favorable to the appellee. The record discloses appellee sustained an injury on March 21, 1947 while loading switch ties for appellant. He and three fellow workmen were carrying them from the right-of-way up to the track and loading them onto a truck and that in lifting a tie up to the truck he had a slip of the foot and "throwed a strain and there was a

sort of burning sensation that went right down his right side and into the right groin and testicle." This accident happened about nine o'clock in the morning and he worked through the rest of the day at light work. He continued work until he was operated. He had pain from the time of the accident until the operation. He went to the hospital on May 6, 1947 and was operated on May 12th, the operation consisting of the removal of the right testicle; that *he never experienced any trouble with his right groin, right side or right testicle before this accident and had had no pain in that region;* that he returned to work on the 10th day of February, 1949 and that his loss of time from work, May 12, 1947 to February 10, 1949, was due to this injury. He was bedfast for better than a year and confined to his house the rest of the time and was unable to do work of any kind. That since February 10, 1949 he is able to do light work but not heavy work, and that if he attempts heavy work he has soreness on the right side that extends down to where the testicle was removed; that it's "just an awful soreness and seems as though I don't have good movement of my right leg after hard lifting," and that he never had any trouble with his right leg prior to the injury; that his sexual reproductive organs are weakened; that he had not received any compensation nor reimbursement for medical expense and that his doctor and hospital bill was $312. That after sustaining the injury he had considerable pain and discomfort in the region of the groin and right testicle and that worried him and he had to take morphine to keep down the pain and that his doctor prescribed the morphine, and he had been taking it for one year. That later he had stomach ulcers and that *he never had any trouble with his stomach prior to this injury.*

One Dr. Mel B. Welborn, whose qualifications as a licensed practicing physician were admitted by appellant, testified he first examined the plaintiff May 7, 1947, and found that he had a large tumor in his right testicle. He got a history of an injury to that region about March 21, 1947, and that the patient had reported this to Dr. George DeTar of Winslow. He recommended that this tumor be removed. He operated appellee on May 12, 1947 and removed the right testicle. The tumor was given to the pathologist at the hospital, who reported it was a cancer, and that the diagnosis of the witness was then made as cancer of the right testicle.

The following is from the record of the examination of Dr. Welborn:

"Q. Assuming that the plaintiff had a pre-existing cancer at the time he had the injury of March 21, 1947, of which he has described, could that aggravate this pre-existing condition so as to make this cancer malignant, or to cause his present trouble?

"A. I think this man's injury which he complains of could have aggravated an existing cancer of the testicle.

"Q. To the extent it had to be removed?

"A. Yes.

"Q. And if one does not know the cause of cancer, Doctor, it would be very difficult to state what aggravated it, would it not?

"A. No, I don't entirely agree with that.

"Q. I believe you said Doctor that any theory of a strain or trauma in any form aggravating cancer is necessarily speculative?

"A. Not entirely. I believe that most people feel that cancer can be aggravated by trauma.

"Q. And do you think that a strain might aggravate a cancer by some disturbance of the cells in the afflicted member?

"A. Yes, I believe I so stated."

After the removal of the testicle the appellee was given X-ray treatments and he last treated the patient in August, 1949. He had attended the patient from the start of the present case to the present time; that after the removal of the testicle the patient had abdominal pain, which was difficult to explain; that he was seen by a number of consultants, and all suspected a recurrence of the cancer but could not prove it; that he was given morphine for the pain and became addicted to morphine. That appellee was operated again on November 26, 1948, when they found a duodenal ulcer without any evidence of cancer. He continued to have severe pain and was re-operated the 16th of August, 1949, at which time he had a partial gastric resection and about three-fourths of his stomach was removed.

Dr. Welborn had treated many cases of stomach ulcer. He said worry and anxiety were regarded as important factors in the production of ulcers. After showing the doctor's experience in ulcer cases, the record discloses the following from the examination of this witness:

"Q. And is it customary to attribute the cause of a stomach ulcer to worry and anxiety, or distress of mind?

"A. That certainly is a very big factor.

"Q. What are some others?

"A. Well, it's known that coffee and tobacco are factors in development of duodenal ulcers.

"Q. And if a person has the internal conditions necessary to set up an ulcer Doctor, it will develop whether he worries or not, won't it?

"A. I doubt it. I think that worry and anxiety are big factors in the production of a duodenal ulcer.

"Q. Would you say that is a factor in every case of duodenal ulcer?

"A. I believe it is in every case. There may be others but it is a prominent factor."

Dr. Welborn estimated the cancer had been developing for months rather than years before he operated appellee. He said the cause of appellee's disability from May 12, 1947 to February 5, 1949 when appellee returned to work, was cancer of the testicle along with the X-ray treatment and other treatments he had to give him. He said appellee had sustained a fifteen to twenty percent impairment of the man as a whole.

For many years it has been well settled in this state that an accidental injury arising out of and in the course of employment which aggravates or accelerates the progress of a pre-existing disease is compensable under the Indiana Workmen's Compensation Act. *In re Bowers. In re Williams. In re Colan* (1917), 65 Ind. App. 128, 133, 134, 116 N. E. 842.

In the case of *Bimel Spoke and Wheel Company* v. *Loper* (1917), 65 Ind. App. 479, 117 N. E. 527, the facts found by the Board were, in part, as follows:

"On the 28th day of September, 1916, one James F. Loper was in the employment of the defendant as a drill press operator at an average weekly wage of $14.30; that on said date, while he was engaged in his work as a drill press operator, the assistant superintendent of the defendant, under whom the said James F. Loper worked, as an act of sport and horseplay upon his part, turned the air from an air compressor maintained at said time in defendant's factory, upon the said James F. Loper in the region of the rectum; that the turning of said air upon the said James F. Loper at said time caused him to quickly jerk and straighten his body; that at the time the said James F. Loper was suffering from an abscess in the region of the gall bladder; that the turning of said air upon him aforesaid by the defendant's assistant superintendent causing him to suddenly jerk and strain himself, ruptured said abscess and resulted in acute

general peritonitis, which caused his death on the 30th day of September, 1916; . . . that said employees had also formed the habit of using said compressor in acts of sport or horseplay by turning the air upon one another, which act is known among them as 'goosing'; that the said James F. Loper had frequently participated in such sport; that such conduct of the employees was carried on with the actual knowledge and acquiescence of the defendant's assistant superintendent; that he in fact actually participated therein and no objection whatever was ever made to such conduct upon the part of employees; that said air compressor had a pressure of about sixty pounds at the time it was turned upon him, the said James F. Loper, by the defendant's assistant superintendent; that at the time said air was turned upon him, the said James F. Loper was not participating to any extent in the sport or horseplay of the defendant's assistant superintendent; . . . "

"One of the physicians testified that in his opinion the conditions found at the autopsy *might have resulted* from an accident which later caused his death; that the diseased condition of the intestines began before the accident occurred." (Our emphasis).

This court, in affirming the award, held the evidence was sufficient to sustain the award.

In the case of *Indiana Power and Water Company* v. *Miller* (1920), 73 Ind. App. 521, 127 N. E. 837, appellee, while working in appellant's coal mine, received an injury in his left eye. Following this injury he was not able to work for two or three weeks. He had the eye treated by eye specialists. His sight began to fail shortly after the injury, and in six or seven months thereafter he had completely lost the sight of both eyes. This court, in affirming an award for the loss of sight in both eyes, said:

"There is no contention over the finding that appellee was injured in the course of his employ-

ment by being struck in the eye with a piece of coal or something. Appellant contends that there is no evidence that this injury caused appellee to lose his eyesight, but that the undisputed evidence shows that the blindness was caused by a constitutional disease. In support of this contention appellant insists that, in a case of this kind, the fact that the blindness was the result of the injury must be proved by the testimony of physicians; and that such fact cannot be proved by nonexpert witnesses. It is not necessary for us to pass upon this contention, as Dr. Knapp in answering the first question asked by appellant on cross-examination testified that the condition of appellee's eyes, the atrophy of the optic nerves in both eyes, *might* have resulted from the injury suffered by appellee in February, 1917. This statement, when taken with the other evidence, is sufficient to support the award." (Our emphasis).

In the case of *J. H. Hardin Company* v. *Crowe* (1924), 81 Ind. App. 513, 143 N. E. 710, this court stated:

"The appellee's claim to an award of compensation was based upon an alleged accidental injury to his left eye, caused by strain in doing some heavy lifting, or in wielding a heavy hammer, which strain produced or caused a hemorrhage in said eye, resulting in the loss of the sight thereof.
"The record discloses that one physician who testified that he had examined the eye of the appellee, also testified that, on such examination, he discovered a hemorrhage in the left eye of the appellee; that, in his opinion, heavy lifting or the wielding of a heavy hammer *could be* the immediate cause of such hemorrhage. Two physicians . . . testified that they did not discover any hemorrhage in said eye, and that, in their opinion, the condition of appellee's eye was the result of disease, and not the result of any accidental injury (hemorrhage) as claimed." (Our emphasis).

The foregoing evidence was held sufficient to sustain the award.

In the case of *Magazine* v. *Shull et al.* (1945), 116 Ind. App. 79, 60 N. E. 2d 611 (Transfer denied), this court followed the rule announced in the above cases, and, speaking through Judge Crumpacker, said: .

"The appellant further contends that the award herein must fail because it depends entirely upon the testimony of Dr. Alvis to establish causal connection between the hemorrhages suffered by the appellee and his subsequent blindness and, because the doctor said blindness *could* result from hemorrhages, rather than *did* result or *probably* resulted therefrom, his testimony has no probative value. It is true that in many jurisdictions courts attach little evidentiary value to statements of medical experts which are doubtful and equivocal and hold that the evidence must establish a probability, not a mere possibility, of causal connection between an injury and disability. In this state, however, it is settled law that the opinions of medical experts using words such as 'might,' 'could,' 'likely,' 'possible,' 'may have,' etc., in testifying concerning the causal connection between accident and disability, if coupled with other credible evidence of a nonmedical character, is substantial evidence and sufficient to sustain an award. (Citing authorities referred to above). In our opinion the chain of events in close sequence, such as the accident itself followed by pain, dizziness, chill and hemorrhages, at frequent intervals over a period of 11 days, together with the fact that the appellee previously had had good eyesight and no hemorrhages, is sufficient, under the rule above announced, to render Dr. Alvis' testimony substantial in character and of such probative value as the Industrial Board saw fit to give it."

We are of the opinion the reasoning of the four last cited cases is sound in principle. Medical science has not developed to the extent that it can diagnose human ailments with the exactitude of the mathematician. It does know that many ailments may be aggravated and their harmful or fatal

end accelerated by trauma. Yet, in many such cases it cannot honestly and unequivocally say that the trauma was the sole cause of the result which occurred after the injury was sustained. This is particularly true with heart disease and aneurysms. In such cases the conscientious practitioner can only give his opinion that the accident "may have," "could have" or "might have" aggravated or accelerated the progress of the disease. Hence, we are committed to the doctrine that where such evidence is supported by other facts, conditions or circumstances which would support a reasonable inference that an accidental injury caused an aggravation or acceleration of a pre-existing disease, there is sufficient evidence to sustain an award of compensation under the Indiana Workmen's Compensation Act. We know of no reason why there should be an exception to this rule when the disease is cancer.

In this case the evidence is undisputed that appellee never had any pain or trouble in the affected region until the accident of March 21, 1947. This, with evidence of Dr. Welborn herein set out, was sufficient to sustain the finding of the Board that the accident aggravated the cancerous condition.

We next proceed to the contention of appellant that there is no substantial evidence to sustain the award for the period of disability due to an operation for duodenal ulcer.

As heretofore stated, the Board found that on account of the accidental injury sustained appellee was disabled from May 12, 1947 to February 10, 1949. The evidence of Dr. Welborn was that appellee's disablement was caused by cancer of the testicle, X-ray treatment, and other treatments which he had to give him. There is nothing in either the finding or the above quoted evidence of Dr. Welborn that the operation for ulcers was in itself responsible for any

of his disability. There is ample evidence that appellee, from the time of the removal of the testicle was disabled for the period found by the Board.

The award of the Full Industrial Board is affirmed.

Crumpacker, J., and Martin, J., concur in part and dissent in part.

NOTE.—Reported in 95 N. E. 2d 639.