MEHLUM, Respondent, v. NUNDA COOPERATIVE
ASSOCIATION et al., Appellants

(56 N. W.2d 282)

(File No. 9289.  Opinion filed December 30, 1952)

Rehearing denied April 10, 1953

Gene McDonnell, Tom Kirby, Jr., Sioux Falls, for Defendants and Appellants, Nunda Cooperative Ass'n and Western Surety Co.

Cherry, Braithwaite & Cadwell, Sioux Falls, J. I. Hossack, Spencer, Iowa, for Defendants and Respondents, Linnihan and Momsen and Hawkeye Casualty Co.

L. F. Ericsson, Madison, for Respondent Emma Mehlum.

ROBERTS, J.   The finding of the Industrial Commissioner in substance was that the death of Julius M. Mehlum on February 18, 1950, resulted from an injury arising out of and in the course of his employment with the appellant Nunda Cooperative Association.   Payments to the widow of decedent were ordered.   The Circuit Court affirmed the award.   The questions presented on appeal are whether the evidence established the relation of employer and employee between said appellant and decedent and whether the cause of his death arose out of his employment if such relationship existed.   Claimant insists that her husband met his death by an intracranial hemorrhage caused by a fall.   Appellants contend that decedent was an employee of respondent Linnihan & Momsen and that the hemorrhage was due to natural causes and was not produced by falling from a truck box while decedent was loading grain at appellant's elevator in Nunda.

The burden of proof rested upon claimant to prove by a preponderance of the evidence the facts necessary to establish a right to compensation.   Wilhelm v. Narregang-Hart Co., 66 S. D. 155, 279 N.W. 549.   It has been repeatedly held that a reviewing court is forbidden to trespass upon the defined jurisdiction of the Industrial Commissioner, the trier of facts, and his findings must be accepted if there is any substantial credible evidence in support thereof.   Edge v. City of Pierre, 59 S. D. 193, 239 N.W. 191, and cases cited.   Claimant cannot prevail if the factors necessary to support the claim are left to mere speculation and conjecture.   The essential facts, however, need not necessarily be proved by direct evidence, but may be established by reasonable inferences drawn from facts shown.   Edge v. City of Pierre, supra; Schlichting v. Radke, 67 S. D. 212, 291 N.W. 585.

We first consider the contention that the finding that the hemorrhage was caused by a fall from the truck is not warranted either by direct evidence or by facts from which an inference can reasonably be drawn. It is plain that if the hemorrhage was not caused by a fall it could not be found by the Commissioner that death arose out of the employment. There was evidence of the following facts: Decedent was 63 years of age and in good health. He was engaged in the evening of February 9, 1950, at the elevator of the appellant cooperative in Nunda, South Dakota, in shoveling and leveling oats elevated into a truck box. That evening at about 11:00 o'clock, the manager of the elevator found decedent on a concrete surface near the truck "lying face down". Ed Momsen, the truck driver, was alseep in the cab of the truck. The manager testified: "I never knew what happened so I asked him if he fell off the truck, and he answered me no. I woke Momsen up, and after that we finished loading the oats, and Mehlum stood up, too. We didn't know how bad he was hurt. * * * He appeared to be dazed. * * * I helped him sit up there before I got Momsen." They finished loading the truck in fifteen or twenty minutes and then assisted decedent to the office in the elevator. Continuing, this witness said: "We walked on each side of him. He was not standing at the time that we came over to him. He fell down again. * * * He seemed to be cold". During the forenoon of the following day decedent was removed from his home to a hospital. Death followed on February 18, 1950. He did not at any time fully regain consciousness.

The attending physician performed a lumbar puncture and found the spinal fluid bloody. He also found a fracture of the right kneecap and numerous contusions and abrasions over the right shoulder, forearm, knee, thigh and leg and on the opposite extremities to a lesser degree. The doctor called as a witness by claimant testified on direct exemination as follows:

"Q. What would your opinion be as to the cause of the fractured kneecap and contusions and abrasions that you found? A. From the history, no one saw him fall, but he was found near this truck and from all evidence had apparently fallen, and from the fractured kneecap one would have to

expect that something like that would have happened to him. * * *

"Q. What is your opinion as to the cause of death? Did Mr. Mehlum suffer a stroke and then fall, or did he fall and then so hurt his head to cause an intracranial hemorrhage that way? A. As far as I can see, the Lord only knows. It's my opinion that intracranial hemorrhage caused the death. I don't know whether he had this before or after he fell.

"Q. Would you believe, doctor, that a fall of such force as to cause the fracture and contusions would have been sufficient to cause the intracranial hemorrhage which was found? A. Yes.

"Q. Assuming that Mr. Mehlum fell out of this truck in question onto this concrete surface and suffered contusions as you testified, would it be your opinion that this was the cause of the intracranial hemorrhage? A. Yes, I think that's possible.

"Q. You wouldn't be able to determine definitely whether or not it might have been a stroke, or that he fell and the hemorrhage resulted from the injury on the fall? A. That's correct.

"Q. Did you examine the outward appearance of Mehlum? A. Yes. We had one X-ray view of his skull. We couldn't see any definite fracture on this X-ray. I might also state that the determining of a fracture in the skull is sometimes very difficult. If it is obvious, it is easy, but because of many lines and shadow markings and so forth in a skull, it is difficult to determine whether a fracture is there or not. It is hard to tell with one X-ray.

"Q. When a man has a stroke, what is the sequence of events? A. I would say that as a rule, with a severe hemorrhage as in this case, that I wouldn't expect him to be too active.

"Q. Is the fact that he sat up later and talked of any aid to you in forming an opinion as to whether a stroke or a fall is more likely? A. May not be of too great help. It would be possible for a patient that had suffered a stroke to come back somewhat for a time, but dazed and so on, and lose consciousness afterwards, and it would also be possible

for one who had an intracranial hemorrhage due to a fall to do the same thing.

"Q. This man apparently after half an hour sat up. Is that the usual history of a stroke? A. No, it is not the usual history of a stroke. Assuming that it would have been a stroke, the bloodiness of the spinal tap would tend to indicate what I would call a heavy stroke. It doesn't seem likely that one would sit up after such a stroke. It probably would be less likely in case of a stroke than it would be in the case of a fall causing intracranial hemorrhage.

"Q. You stated that from the amount of blood in the spinal fluid, if it had been a stroke that would have been a severe stroke? A. Yes.

"Q. Just assuming if it had been a stroke, how severe would that amount of blood have indicated, and what would have been the amount of time that Mr. Mehlum would have survived after that time? A. Mehlum lived about eight days, I believe.

"Q. Would there have been any difference in the length of time he could have been expected to survive on the basis of whether it was a stroke or a hemorrhage caused by injury? A. I don't believe that one can draw any definite conclusion there.

"Q. Were there any symptoms in your treatment of Mr. Mehlum other than the blood shown in the spinal fluid? Any other indications that Mr. Mehlum might have suffered a stroke? A. The signs and symtoms from intracranial hemorrhage or stroke might be very similar."

On cross-examination the witness testified:

"Q. Doctor, as I understand your answers to questions, particularly from the Industrial Commissioner, it is anybody's guess whether a stroke or fall induced the intracranial hemorrhage. A. That's right.

"Q. I believe you did say that sitting up would be more likely after a fall than a heavy stroke. A. The reason I say that is because with the usual case of stroke in a man of his age group, one would not expect that to occur.

"Q. You say the symptoms of both the fall and stroke are quite similar? A. Yes, it just seems to me that it would be more likely.

"Q. Would you consider it improbable in any case? A. With as much hemorrhage, you would consider it improbable whether a stroke or a fall. In the case of a spontaneous hemorrhage or stroke, one would expect a great deal or probably the major part of your hemorrhage to occur immediately, but in case of a fall, your hemorrhage might occur more gradually.

"Q. Couldn't it be either way in either case? A. Yes, it could be.

"Q. Your opinion is more of a guess? A. It's a guess, sure.

"Q. Wouldn't you agree that many doctors would disagree as to the cause? A. That's probably true.

"Q. Did you find evidence of any blow on the head? A. I'm not sure about that. There's nothing noted in the physical examination concerning a large bruise on the head.

"Q. Wouldn't it be likely that from such a fall there would be some evidence on the head? A. It would be likely.

"Q. Isn't is entirely possible that this man could have had a stroke, fallen from the truck, and never hurt his head at all? A. Yes."

On redirect examination the witness testified:

"Q. Did you hear Mr. Lysne testify that there was some blood on Mr. Mehlum beneath his nose on his lip, when they first found him? A. Yes.

"Q. Would this be any indication as to whether or not there had been an injury to Mr. Mehlum's head from the fall? A. Bleeding from the nose might indicate some type of trauma. On the other hand, it is possible that it could occur from a stroke."

█ It is conceded that death resulted from an intracranial hemorrhage. It is contended that the Commissioner in his findings indulged in mere speculation and conjecture and had no evidence before him from which an inference that decedent received an injury which arose out of his employment and that resulted in his death could reasonably be drawn. Appellants seem to place their greatest reliance in support of this contention upon In re Sanderson's Case, 224 Mass. 558, 113 N.E. 355, 357. In that case decedent was

driving along a country highway with a horse and wagon and was found unconscious in the road with a cut over the right eye extending through the scalp and causing a slight hemorrhage from the periosteum. Reversing an award the court said: "While there was ample evidence from which it could have been found that, so far as could be ascertained, the employee was in a normal and healthy condition, without any impairment of his arteries, or disease of any of the organs of his body, and that it was unusual for a man of his age to suffer a cerebral hemorrhage unaccompanied by some physical injury, still there seems to be an entire absence of evidence to show that the hemorrhage was caused by the fall from the wagon. It could have been found that the blow upon the head was sufficiently severe to have caused the hemorrhage, but there is no evidence to show that such injury did produce the hemorrhage. In other words, a finding that the hemorrhage preceded the fall and caused the employee to fall from the wagon is as consistent with the evidence as is a finding that the hemorrhage was caused by the fall." There is no preponderance of evidence and the burden of proof in other words has not been sustained if the probabilities are equal. See Erickson v. Todd, 62 S. D. 280, 252 N.W. 879; Anderson v. Dunn, 68 S. D. 479, 4 N.W.2d 810; Crilly v. Morris, 70 S. D. 584, 19 N.W.2d 836. Proof need not arise to a degree of absolute certainty, but mere possibility is not sufficient.

In the instant case the evidence fairly warrants the inference that deceased fell from the truck box. We know that the intracranial hemorrhage was the cause of his death, but we do not know that the hemorrhage was caused by a fall. There is no claim that exertion in the work performed by decedent contributed to the hemorrhage. The attending physician as has been related, after detailing his examination of decedent, testified that he found no "definite fracture" of the skull and that he could not determine whether or not the hemorrhage preceded or was caused by a fall. The absence of a bruise or other indication of a blow on the head, while not conclusive, militates against the inference of an accidental injury. Claimant points to the testimony of the doctor to the effect that sitting up after

apoplectic seizure "probably would be less likely" than that after a fall causing intracranial hemorrhage. He testified that the circumstance "may not be of too great help" and from a reading of his entire testimony it does not appear that he was of the opinion that the hemorrhage was caused by a fall. The evidence was too insubstantial to sustain an award.

The issue of employer-employee relationship will be involved in the event of a retrial, and it seems proper here to state that we have considered the record in respect thereto and have concluded that the evidence before us is sufficient to support the finding that decedent was at the time in question an employee of the Nunda Cooperative Association.

The judgment appealed from is reversed.

SICKEL, P. J., and SMITH, J., concur.

RUDOLPH, J., concurs specially.

LEEDOM, J., dissents.

RUDOLPH, J. (concurring specially) . I am inclined to agree that the evidence does not support the finding of the Commissioner that the fall from the grain box caused the intracranial hemorrhage. However, it appears to me that the record establishes without dispute that the hemorrhage was caused either by the fall or by a "stroke". If deceased suffered a stroke while in the course of his employment, and the work contributed to the stroke, the stroke would be an injury by accident within the meaning of the Workmen's Compensation Law. Johnson v. LaBolt Oil Co., 62 S. D. 391, 252 N.W. 869. Or if the fall would contribute to a stroke this would be an injury by accident.

The evidence sustains the view that if deceased suffered a stroke, it was while he was engaged in his work, as the shovel was near where he was found on the pavement, and it was apparent from the injuries sustained that he had fallen from the truck.

I think the case should be remanded to the Industrial Commissioner to determine if necessary by additional evidence whether the type of work deceased was performing or the fall or both would contribute to a stroke.

No one can say definitely whether the hemorrhage was due to the fall or to a stroke, but if due to either, and if a stroke would be contributed to by the work or fall, then an award should be made. In either event the injury was by accident, sustained in the course of employment, and assignable to a definite circumstance.

LEEDOM, J. (dissenting). I think the award made by the Industrial Commissioner and affirmed by the circuit court should be sustained. In my opinion the circumstances of the fall and the medical testimony support the award under the valid and prevailing rule in compensation cases. Compare Maher v. Duluth Yellow Cab Co., 172 Minn. 439, 215 N.W. 678; Hiber v. City of St. Paul, 219 Minn. 87, 16 N.W.2d 878; Dean v. Benton Harbor-St. Joe Ry. & Light Co., 231 Mich. 23, 203 N.W. 952; McVicar v. Harper Hospital, 313 Mich. 48, 20 N.W.2d 806; Peter Kiewit Sons' Co. v. Industrial Commission of Colorado, 124 Col. 217, 236 P.2d 296; Blackfoot Coal & Land Corporation v. Cooper, 121 Ind.App. 313, 95 N.E.2d 639; Carpenter v. Sibley, Lindsay & Curr Co., 302 N.Y. 304, 97 N.E.2d 915; Walter v. Hagianis, 97 N.H. 314, 87 A.2d 154; Hampton Roads Stevedoring Corporation v. O'Hearne, 4 Cir., 184 F.2d 76; and the cases therein cited.

The lack of certainty in the doctor's testimony, as appears from these cases, should not spoil the whole effect of his testimony nor nullify his expressed view that death from hemorrhage due to the fall was more likely than death from a stroke inasmuch as the deceased was able to sit up soon after the accident and that ability to thus sit up and talk is not the usual history of a stroke in a man of decedent's age group. As I see it this statement is not mere conjecture but rather a substantial medical opinion, necessarily equivocal to a degree because of the inexactness of medical science, but grounded on the factual basis of the fall; and the commissioner's inference based thereon that death resulted from the fall seems entirely rational.

It is quite clear to me that the evidence rule on which the majority opinion rests, announced in Erickson v. Todd, 62 S. D. 280, 284, 252 N.W. 879, 881, should not be extended to compensation cases. The true rule I am satisfied, and I

believe the cases above cited so indicate, is that the commissioner is entitled to draw any reasonable inference from evidence such as we have in this case, is not only entitled but duty bound to weigh probabilities, and then to decide the fact issue accordingly; and that it is outside the function of a reviewing court to disturb such finding of fact even though in its own view another or different inference seems equally or even more logical. As early as 1925 the Supreme Court of Michigan in Dean v. Benton Harbor-St. Joe Ry. & Light Co. above, declined to apply to a fact situation somewhat analogous to ours the rule of Sanderson's Case, 224 Mass. 558, 113 N.E. 355, 1916 on which the majority opinion of this court relies and which formed the basis of a dissent in the Michigan case.