LEMKE, Claimant and Appellant v. RABENBERG'S, INC., Employer and Respondent and Agricultural Ins. Co., Insurer and Respondent

(233 N.W.2d 336)

(File No. 11330. Opinion filed September 25, 1975)

Murray Ogborn of Siegel, Barnett, Schutz, O'Keefe & Ogborn, Aberdeen, for claimant and appellant.

Chester A. Groseclose, Jr., of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for employer-insurer and respondents.

COLER, Justice.

The widow of Alfred Lemke seeks workmen's compensation benefits for herself and their minor children. The Commissioner of Labor and Management Relations denied the claim and, on appeal, the circuit court affirmed the action of the Commissioner. The principal issues before this court are the determination of whether, and to what extent, the state's administrative procedure act applies to proceedings in workmen's compensation proceedings and, if SDCL 1-26 applies to such proceedings, whether there has been compliance. The issues arise out of claimant's argument, stated among her objections to the proposed findings, that the findings of the Commissioner are insufficient, bringing into focus the requirements of SDCL 1-26-25; and, on the other hand, respondents' insistence that the scope of review of both the circuit court and this court is governed by prior decisions of this court without recognizing the language of SDCL 1-26-36 as applicable.

We reverse.

The claim herein was filed with the Commissioner on December 21, 1971 and the hearing was held on April 14, 1972. The evidence before the Commissioner relative to the preexisting condition of the health of the decedent and accidental injury consisted of the testimony of the claimant widow and other relatives, several co-workers of the decedent, and the coroner. Two witnesses, also co-workers, were called by the employer-insurer. All other evidence was in the form of depositions, two taken of witnesses who testified at the hearing, those of Drs. Kumar and Torkildson, for claimant, taken prior to the hearing on April 7, 1972 and that of Dr. William R. Taylor, for employer-insurer, taken subsequent to the hearing on April 18, 1972. In addition, there was a statement of witness Geigel taken shortly after the incident used for impeachment purposes but which was apparently not given credence by the Commissioner.

On June 28, 1972, the Commissioner, in the form of a letter which he entitled "Memorandum of Decision" and, in keeping with his statement at the close of the hearing that "The party on the winning side, for lack of better words, will then prepare

findings of fact and conclusions of law and submit it   *   *   *". directed counsel as follows:

> "The attorney for the employer-insurer may therefore prepare Findings of Fact Conclusions of Law and a Denial of Award consistent with the terms of this Memorandum. Please submit four copies to this office and one to counsel for claimant. Counsel for claimant will be given seven days to object to the proposed Findings and if no objections are received, the Denial of Award will be signed on the seventh day and a Notice of Decision will be served upon the parties of record."

The attorney for the "winning party" obviously prepared the Findings of Fact and Conclusions of Law and thereafter on July 19, 1972 claimant entered Objections to Findings of Fact and Conclusions of Law.

Although no rule had been adopted to permit parties to submit proposed findings which necessitates "a ruling on each proposed finding" the Commissioner did make some cryptic marginal comments on several of the claimant's objections but accepted, without ruling on each, SDCL 1-26-25, all of the proposed Findings of Fact and Conclusions of Law prepared by counsel for employer-insurer on the 19th of July, 1972.[1] The objections of claimant raises the issue of whether the findings of

---

1. The text of the Findings of Fact and Conclusions of Law are set forth as follows:

"FINDINGS OF FACT

1. That on December 26, 1969, and for a period of time prior thereto, Alfred Lemke was in the employ of Rabenberg's, Inc., the employer herein, of Selby, South Dakota.

2. That the said Alfred Lemke's employer was on December 26, 1969, insured in accordance with the South Dakota Workmen's Compensation Law by Agricultural Insurance Company of Watertown, New York.

3. That on December 26, 1969, while Alfred Lemke was engaged in the aforesaid employment with Rabenberg's, Inc., he was acutely ill, and at about 7:30 p. m. he died.

4. That the activities in which Alfred Lemke was engaged on December 26, 1969, considered with the environmental conditions to which he was exposed during those activities, did not constitute unusual exertion.

5. That no causal relationship exists between the said Alfred Lemke's

fact are accompanied by a concise and explicit statement of the underlying facts supporting the findings. [2]

It is uncontroverted that Alfred Lemke died on December 26, 1969, at age 43, while in the employ of Rabenberg's, Inc., of Selby, South Dakota, an implement dealer who also had a business in McLaughlin. Although not reflected in the findings adopted and although we feel no constraint to bolster the findings by reference to his memorandum of decision, not incorporated by reference, as we might do with findings of the circuit court, *Mulder v. Tague*, 1971, 85 S.D. 544, 186 N.W.2d 884, we consider the statement therein by the Commissioner binding to the effect that the cause of Alfred Lemke's death was a coronary occlusion as stated in the death record prepared by the coroner who was not a physician.

Although there was some material conflict in the evidence it appears that on Christmas day, the day preceding his death, as

---

work-connected activities on December 26, 1969, or prior thereto, and his death on that date.

CONCLUSIONS OF LAW

1. That the Commissioner of Labor and Management Relations has jurisdiction over the parties to this action and over the subject matter of this action.

2. That Alfred Lemke's death on December 26, 1969, was not the result of an injury by accident arising out of and in the course of his employment within the meaning of the South Dakota Workmen's Compensation Law, SDCL, Title 62.

3. That the survivors of the said Alfred Lemke are not entitled to a recovery of Workmen's Compensation benefits from the employer or insurer herein by reason of the death of the said Alfred Lemke."

2. In part that objection reads:
"* * * the proposed Findings of Fact are completely devoid of any substantiating factual data supportive of the proposed Conclusions of Law. The Commissioner's Memorandum contained such factual information and Claimant's rights will be substantially prejudiced in further proceedings if these undisputed facts are not included in the Findings of Fact. The omitted facts in the proposed Findings of Fact and Conclusions of Law include reference to the age and physical condition of deceased, weather conditions, the fact that Claimant's deceased became stuck on several occasions and endeavored to remove his 2-ton truck for a period of several hours, the fact that Claimant's decedent engaged in arduous physical labor including shoveling and the fact that the cause of death was listed on the death certificate as coronary occlusion."

testified by his widow and relatives who had been at the family dinner, the decedent showed no signs of illness. On December 26th, as was customary, he had joined his family in farm chores at his rural home near Selby, had breakfast at home, arrived at work at the usual time and returned home for lunch. After lunch the decedent was to deliver a load of farm machinery, consisting of a tractor and a loader, on a 2-ton truck to the Peterson Brothers ranch 10 to 15 miles from Little Eagle, a distance of approximately 25 miles from McLaughlin. Concededly Alfred Lemke was not feeling well when he stopped for directions at the McLaughlin store. For that reason and because he was not familiar with the location of the Peterson place, Gilbert Geigel, an employee of the McLaughlin store, accompanied him on the remainder of the trip to effect delivery of the machinery.

The temperature that day was between 13 and 15 degrees Fahrenheit, the wind was blowing, causing drifting snow, and the roads were icy. A portion of the distance to the ranch was on an icy hard-surfaced road. Lemke drove the truck on this stretch. The remaining distance was graveled and Geigel drove. After arriving at the ranch and unloading the machinery, part of it was reloaded when it was found that delivery had been made to the wrong Peterson ranch, only to be again unloaded to facilitate getting the truck back up the hill as it could not do so on its own. Pat Peterson, one of the ranch owners, hooked his tractor to the truck which Mr. Lemke was driving to assist in getting it up a steep, winding, mile-long hill which was apparently the only access to the Peterson ranch. A four-wheel-drive unit was later attached to the tractor to provide additional pulling power after the truck had been stuck on several occasions and the tractor alone could not extricate it. Shoveling was apparently done by both Lemke and Geigel, although there is conflict in the testimony as to who did the major portion of the shoveling, at the several times they were stalled on the hill. Shoveling occurred and hooking and rehooking of the chains and cables between the vehicles was done each time progress was made, which necessitated the drivers of the various vehicles getting into and out of their vehicles a number of times. At one point, the truck was in danger of slipping off the road and over a 15-foot embankment. After finally negotiating the hill, which consumed nearly 3 hours

(though 1 hour in Mr. Geigel's estimation, he also estimated the hill was only 800 feet long), they proceeded to McLaughlin.

On the return home Mr. Lemke was quiet and after he had driven for some time after reaching the top of the hill he requested Geigel to take over the driving. Upon reaching McLaughlin at 7:00 p. m. Lemke went to the home of Arnold Schott, Rabenberg's shop mechanic at McLaughlin, where he stated he did not feel well enough to drive Schott's pickup back to Selby and asked for some aspirin. He appeared pale and was apparently unable to stand upright without support. · He request- ed Schott to drive him back to Selby some 51 miles distant. When they had traveled approximately 10 miles, Lemke suddenly collapsed on the floorboard of the vehicle gasping for air, foaming at the mouth and clutching at the left side of his chest. Mr. Schott returned to McLaughlin and took Lemke to the. hospital where the doctor pronounced him dead.

This court has not heretofore had occasion to construe the provisions of SDCL 1-26-25 as it relates to sufficiency of findings of an agency as defined by SDCL 1-26-1(1). Some previous decisions of this court, including *Edge v. City of Pierre*, 1931, 59 S.D. 193, 239 N.W. 191 and *McKinnon v. State Banking Commission*, 1960, 78 S.D. 407, 103 N.W.2d 179, though illustrative, were not predicated on a statute such as SDCL 1-26-25. This provision stating, in part, the requirements that "Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the under- lying facts supporting the findings. If, in accordance with agency rules, .a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding", was adopted from the Model State Administrative Procedure Act § 12 (1961), promulgated by the National Conference of Commissioners on Uniform State Laws. The note prepared by that conference clearly reflects the purpose of the statute ˙ and the legislative intent:

> "An attempt is here made to require agency find- . ings to go beyond a mere statement of a general conclu- sion in the statutory language (e. g., that 'public in- terest, ·convenience and necessity' will be served) or in language of similar generality. The intent is to require

the degree of explicitness imposed by such decisions as *Saginaw Broadcasting Company v. Federal Communications Commission* (Ct.App.D.C., 1938), 96 F.2d 554, where the court required a statement of the 'basic or underlying facts.' Several states have concerned themselves with this problem. Missouri has adopted the requirement that findings of fact and conclusions of law shall be 'separated.' North Dakota and Virginia require that findings shall be 'explicit.' The desire is to find the proper middle course between a detailed reciting of the evidence on the one hand and the bare statement of the conclusions of fact or the 'ultimate' facts on the other. The phrase 'underlying facts supporting the finding' seems about right." Commissioners' Note following § 12, Model State Administrative Procedure Act (1961).

As indicated by that same note the provisions are an adaptation of Sec. 8(b) of the Federal Administrative Procedure Act. 5 U.S.C.A. § 1007(b). Absent substantial compliance with this statute judicial review would be effectively foreclosed. *McKinnon v. State Banking Commission,* supra.

■ A review of the findings of fact before us, based upon even a minimal standard, leaves us with a clear conviction that they do not measure up to the requirements of SDCL 1-26-25 and we so hold. Since by our disposition of this case a successor to the then commissioner, qualifying under SDCL 62-7-12.1 as a hearing officer, will be a licensed attorney, we deem it unnecessary in the instant case to further discuss the requirements of the statute.

The trial court applied *Joffer v. Crusy's Power Brake & Supply, Inc.,* 1968, 83 S.D. 191, 156 N.W.2d 189, as governing that court's scope of review. Subsequently, this court determined, in *Application of Ed Phillips & Sons Company,* 1972, 86 S.D. 326, 195 N.W.2d 400, that the standard of review is governed by SDCL 1-26-36(5). Therefore the court erred but no useful purpose would be served in an extended discussion of what changes are wrought thereby as in this case it is determined that the findings are insufficient for purposes of review. For the same reason we have declined to discuss relative weight of expert testimony contained in the depositions herein. While this court is

in as good a position as the Commissioner to weigh that testimony, *Geo. A. Clark & Son, Inc. v. Nold,* 1971, 85 S.D. 468, 185 N.W.2d 677, the facts have not been sufficiently determined by the trier of fact to determine whether questions presented to those experts portrayed the true facts.

The judgment of the circuit court and the decision of the Commissioner are reversed 'and this case is remanded to the circuit court and that court is directed to enter its order setting aside the decision of the commission and directing rehearing before the Department of Manpower Affairs, which shall receive such additional evidence as the parties may have to present, and to enter findings thereon consistent with this opinion.

WINANS and DOYLE, JJ., concur.

DUNN, C. J., concurs specially.

WOLLMAN, J., dissents.

DUNN, Chief Justice (concurring specially).

I concur in the results of this case; however, I do not agree that it should be reversed on the grounds of insufficiency of the findings of fact and conclusions of law. First, I feel the findings are substantially in compliance with the requirements of SDCL 1-26-25.

Second, appellate tradition indicates that decisions be predicated on issues not raised by the parties only in the extraordinary situation where these issues are completely controlling of the case and justice can only be done by raising the issues in this court. Here, the case should be reversed on the grounds that the conclusions of law are "palpably erroneous" in view of the uncontroverted evidence.

The standard for review in workmen's compensation cases was outlined by this court in *Joffer v. Crusy's Power Brake & Supply, Inc.,* 1968, 83 S.D. 191, 156 N.W.2d 189. There we said:

"The trial forum for ascertaining facts is the Commissioner and facts so found must be accepted by the re-

viewing court, unless so palpably erroneous on the record as to be unreasonable; such findings standing substantially upon the same plane as a jury verdict."

After reading the record in its entirety, I am of the opinion that the findings and conclusions of the Commissioner were "palpably erroneous" and that a reversal is in order.

The law is clear in South Dakota that in order to be compensable the injury or death must be by accident. SDCL 62-1-1(2). In heart attack cases this requirement is met if the attack is causally related to "unusual exertion" in the course of the employment. *Campbell v. City of Chamberlain*, 1960, 78 S.D. 245, 100 N.W.2d 707; *Oviatt v. Oviatt Dairy, Inc.*, 1963, 80 S.D. 83, 119 N.W.2d 649. The issues therefore are whether the activities of Mr. Lemke on December 26, 1969, constituted unusual exertion, and, if so, whether this exertion is causally related to his death.

The following facts are uncontroverted in the record: Decedent, a 43-year-old male in good health, arose about 6:30 or 7 a. m. on December 26th. He ate a normal breakfast and arrived at Rabenberg's at approximately 8 a. m. He worked at odd jobs, primarily painting machinery, during the morning hours. He returned home at noon and ate a normal lunch. At approximately 1 p. m. he set out from Selby for Little Eagle, South Dakota, in a two-ton truck to deliver some machinery to the Peterson Bros. ranch. Since he did not know the location of the ranch he stopped at Rabenberg's in McLaughlin to ask directions. He mentioned to Mr. Schott, the shop manager at McLaughlin, that he did not feel well. Schott sent Gilbert Geigel with Lemke to help him locate the ranch and unload the machinery. They set out for the Peterson ranch which was about 25 miles away. There was a ground blizzard in progress and the temperature was between 15 and 17 degrees Fahrenheit.

The men had trouble getting into the Peterson ranch because the road was slippery. They had no trouble unloading the machinery with the power winch, but were then told by Pat Peterson that some of the machinery had to be delivered to another ranch. They reloaded the truck but could not get up the

hill on the Peterson ranch to get to the main road. They became stuck in the drifts. Geigel helped pull the truck with a tractor and Peterson pulled with a four-wheel-drive vehicle. Lemke drove the truck. He was required to get out of the truck several times to hook and unhook chains. Geigel testified that he and Lemke had to shovel snow several times. Peterson did not see them shovel. There was a 15-foot embankment at the side of the road and at one point there was a danger that the truck which Lemke was driving would slip down the embankment. The men initially arrived at the ranch at 3 p. m. and they finally got up the hill at 6:30 p. m. Lemke started to drive back to McLaughlin but had Geigel take the wheel shortly after leaving the Peterson ranch. Lemke went to Schott's home when they got to McLaughlin. He stated that he was not feeling well and asked for some aspirin. He was pale, his eyes were glassy and he could not stand without supporting himself on Schott's dryer. Schott started to drive him to Selby and he collapsed on the floorboard of Schott's pickup about ten miles out of McLaughlin. He was dead on arrival at the McLaughlin hospital.

I believe that these facts establish that Lemke's death was caused by unusual exertion. The Commissioner felt that the activities of December 26th were not unusual. I think that it is unusual exertion to have to work for three hours to extricate a two-ton truck from snowbanks.

Further, it is quite obvious from the Commissioner's memorandum decision that he was concerned only about usual physical exertion on Lemke's part. He did not consider the unusual mental strain in steering the truck and trying to avoid slipping down a 15-foot embankment. He did not consider the frustration of being stuck for three hours in 15 degree temperature. This court has never held that unusual exertion includes mental exertion and mental strain. Mental exertion is recognized as a cause of heart attack in workmen's compensation cases in Minnesota. *Sokness v. City of Virginia,* 1950, 231 Minn. 215, 42 N.W.2d 551. I can think of no reason why it should not be recognized in South Dakota. When one considers the mental and physical exertion of December 26th, it is hard to say that this was a usual occurrence in Mr. Lemke's working day.

A collateral reason for the Commissioner's denial was that since Lemke complained of illness before the trip to the Peterson ranch the exertion did not cause his death. In *Oviatt v. Oviatt Dairy, Inc.*, supra, it was specifically stated that even if a disease is preexisting, it is compensable if the work aggravates the condition. I interpret this to mean that even if Lemke was suffering heart trouble when he arrived in McLaughlin, the exertion of the afternoon aggravated this problem and led to his death at around 8 p. m. that night. It should be pointed out that in terms of time, Lemke's death was much closer to his alleged unusual exertion than Max Oviatt's death after his exertion in *Oviatt v. Oviatt Dairy, Inc.*, supra.

WOLLMAN, Justice (dissenting).

I would hold that the findings of fact and conclusions of law entered by the commissioner, when read in the light of the commissioner's memorandum of decision and his order affirming the findings of fact and conclusions of law, wherein he found claimant's objections to the findings of fact and conclusions of law to be without merit, substantially comply with the requirements of SDCL 1-26-25 inasmuch as they state the ultimate facts in issue. Cf. *Edge v. City of Pierre*, 59 S.D. 193, 239 N.W. 191.

Although it may be conceded that respondent's attorney could very well have included more of the material set forth in the commissioner's memorandum of decision in the findings of fact and conclusions of law, it would be an idle act to remand this case for the entry of additional findings and conclusions. I think that the parties are bound by the record that they made at the first hearing, and I would not open the case for the presentation of additional evidence.

Implicit in my stand for affirmance, of course, is my conclusion that the evidence in the record, whether measured by the "palpably erroneous" rule, or by the substantial evidence standard of SDCL 1-26-36(5), is adequate to support the commissioner's determination.

I do agree generally with the admonition set forth in the majority opinion that all agencies should comply with the requirements of SDCL 1-26-25.