In the Matter of the Cancellation, Revocation or Suspension of South Dakota State Board of Medical and Osteopathic Examiner's License # 1272 Issued to Krishna YEMMANUR, M.D.

No. 16556.

Supreme Court of South Dakota.

Argued Sept. 11, 1989.

Decided Nov. 1, 1989.

John H. Zimmer of Zimmer and Duncan Parker, for appellee, South Dakota State Bd. of Medical and Osteopathic Examiner's.

Richard J. Helsper of Erickson, Helsper & O'Brien, P.C., Brookings, for appellant, Krishna Yemmanur, M.D.

WUEST, Chief Justice.

Dr. Krishna Yemmanur (appellant) appeals a circuit court order affirming the decision of the South Dakota State Board

of Medical and Osteopathic Examiners which suspended his license to practice medicine.[1] We affirm.

Appellant is a doctor licensed to practice in the State of South Dakota by the South Dakota State Board of Medical and Osteopathic Examiners (Board of Examiners). In 1982, appellant began his practice in Estelline, South Dakota. Several years later, the Board of Examiners received information from the South Dakota Peer Review Organization (PRO) that the appellant had been investigated by the PRO regarding alleged violations of section 1156 of the United States Social Security Act dealing primarily with excess charges and supposedly unnecessary hospital admissions. Upon receipt of this information, the Board of Examiners appointed an investigating committee to investigate the conduct of the appellant. As a result of this investigation, a complaint was filed with the Board of Examiners alleging that the appellant was guilty of conduct reflecting gross incompetence as set forth in SDCL 36-4-29.[2] This complaint contained seven charges of gross incompetence.

A hearing was held before the Board on May 12, 1987, and June 2, 1987. During this hearing the Board of Examiners heard testimony from primarily two witnesses. The first was Dr. George Thompson, an osteopath from Watertown, South Dakota, who was also a member of the PRO Board, and a member of the Board of Examiners. Dr. Thompson disqualified himself from sitting in deliberations at the appellant's hearing because of his involvement in the investigation and prosecution of the appellant.

The second expert, Dr. Theodore H. Sattler, is a specialist in internal medicine from Yankton, South Dakota, and is the medical director for the PRO.

After an extensive hearing, the Board of Examiners entered its findings of fact and conclusions of law determining that the appellant's conduct in the first six counts of the complaint did in fact reflect gross incompetence. The seventh count was dismissed by the Board of Examiners in September of 1987. Appellant sought judicial review of the Board's decision in the circuit court of Miner county. The decision of the Board of Examiners was affirmed by the circuit court in all respects.

Appellant raises several issues on appeal. He first alleges that he was not afforded a fair and impartial hearing because the persons presenting the case against him had special relations to the Board of Examiners, thus making it impossible for the Board to remain unbiased. Appellant also contends that his due process rights were violated because he was not provided with sufficient notice of a complaint against him as required by SDCL 1-26-29. Appellant further alleged that the circuit court and the Board of Examiners erred in not applying the standard of care used in tort actions in judging the appellant's conduct. It is also alleged by the appellant that the findings of fact set forth by the Board of Examiners were insufficient under state law in that they were mere statements of general conclusions. As a result, the appellant contends that the circuit court should have held that these findings were

1. The Board ordered that the license of the appellant be suspended, provided however, such suspension is stayed subject to the following terms and conditions: (1) that the appellant desist and refrain from any and all practice of medicine except as provided hereinafter; (2) appellant may attend a medical remedial educational program ... and during such program appellant may perform such medical services as the director of such program shall determine are desirable or necessary as part of such program; and, (3) if appellant successfully completes a full-time medical remedial educational program of at least six consecutive months duration, which is approved in writing by the Board ..., and the director of such program makes a favorable recommendation relative to

the appellant ..., the staying of the suspension shall be permanent and his license to return to the private practice of medicine shall be reinstated....

2. SDCL 36-4-29 provides:
   The South Dakota state board of medical and osteopathic examiners may cancel, revoke, suspend or limit the license of any physician, surgeon or osteopathic physician or surgeon issued under this chapter upon satisfactory proof in compliance with chapter 1-26 of such a licensee's gross incompetence, or unprofessional or dishonorable conduct or proof of a violation of this chapter in any respect.

freely reviewable, rather than judging them according to the "clearly erroneous" standard.

■ We begin by discussing the issue of whether the appellant's due process rights had been violated during the course of the proceedings before this matter was appealed. The appellant first argues that he was not afforded a fair and impartial hearing because many of the people that presented the case against the appellant had special relations with the Board of Examiners. This issue has been presented to this court on a number of occasions. In addressing this issue concerning administrative hearings we have noted that the fact "[t]hat the prosecuting and adjudicating authority are closely akin does not violate due process." *Romey v. Landers*, 392 N.W.2d 415, 420 (S.D.1986). Additionally, we have stated that an administrative agency can both prosecute and adjudge a dispute, without violating due process rights, providing a single person or persons does not stand in both the prosecutorial and adjudicatory roles. *Apoian v. State*, 89 S.D. 539, 544, 235 N.W.2d 641, 644 (1975); *Romey, supra* at 420. The only person in the present case who may have fallen into this category was Dr. George Thompson as he was a member of the Board of Examiners and also a chief witness for the prosecution. The record is clear, however, that Dr. Thompson disqualified himself from the Board of Examiners in this case so as to participate only in the prosecutorial role, and not the adjudicatory role. Therefore, we do not believe that, on the basis of these facts, the appellant was denied his right to a fair and impartial hearing by a fair and impartial tribunal.

■ The appellant also contends that his due process rights were violated because the Board of Examiners had preconceived notions as to his guilt and were predisposed as to the outcome of the case. The appellant asserts that these preconceived notions are evidenced by the fact that it was not until the final few minutes of testimony that the Board members asked the experts whether the appellant was grossly incompetent in his conduct. We find no merit in this argument. The record reflects that the Board of Examiners listened to over 540 pages of testimony from several witnesses and received over forty exhibits relating to the appellant's conduct. The experts ultimately testified that the appellant's conduct as to each of the six counts stated in the complaint was grossly incompetent. These facts strongly indicate that the Board did not have any preconceived notions as to the guilt of the appellant. Therefore, we hold that the appellant's due process rights were not violated on the grounds that the Board of Examiners was predisposed regarding the outcome of the case.

■ Finally, appellant argues that his due process rights were violated in that the notice of the complaint served upon him was insufficient according to state law. We disagree. SDCL 1-26-29 provides that no suspension of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice to the licensee of facts or conduct which warrant the intended action. The notice of the complaint must apprise the licensee, with reasonable certainty, of the accusation against him so that he may prepare his defense. *In re Kunkle*, 88 S.D. 269, 275, 218 N.W.2d 521, 524 (1974). Upon review of the complaint, we find that the allegations in the complaint were reasonably certain and, hence, were sufficient to apprise the appellant of the accusations against him. The complaint identifies, in Counts I through VII, the ages and chart numbers of the particular patient. Each count also includes the symptomology and course of treatment given by the appellant (in Count VI, the lack of treatment by the appellant is noted). Furthermore, we believe these counts sufficiently stated the particular acts deemed to be wrongful. We cannot conclude, therefore, that the appellants due process rights were violated on account of insufficient notice.

■ It has also been asserted by appellant that the findings of fact adopted by the Board of Examiners are insufficient to allow a reviewing court to determine how the Board of Examiners reached the conclusion that the appellant was grossly in-

competent. Appellant contends that these findings of fact are mere statements of general conclusions, and therefore are freely reviewable on appeal. We disagree. SDCL 1–26–25 states that "[f]indings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." In *Lemke v. Rabenberg's, Inc.*, 89 S.D. 386, 233 N.W.2d 336 (1975), we had an opportunity to address the scope of the aforementioned statute. In *Lemke*, we adopted the view that an agencies findings of fact must go beyond a mere statement of a general conclusion in the statutory language or in language of similar generality. *Lemke, supra*, 233 N.W.2d at 339. In explaining this view, we adopted the following language:

> The desire is to find the proper middle course between a detailed reciting of the evidence on the one hand and the bare statement of the conclusions of fact or the 'ultimate' facts on the other. The phrase 'underlying facts supporting the finding' seems about right.

*Lemke, supra.*

Having reviewed the findings of fact, we believe that these findings are sufficient to meet the requirements of SDCL 1–26–25. The findings of fact in each of the six counts against the appellant include a factual basis for the findings given, and they are not mere statements of general conclusions in the statutory language. Counts III and IV of the findings of fact cite lack of appropriate documentation of medical care to support the conclusion of gross incompetence. Count V also cites lack of appropriate documentation as well as lack of appropriate patient management and competent knowledge in the use of antibiotic drugs. Count VI cites lack of appropriate documentation, inconsistent treatment relative to possible bleeding, and an unsubstantiated diagnosis as supporting the con-

clusion of gross incompetence. Count VII cites confusion relative to diagnosis and treatment, and lack of appropriate documentation of inflammatory bowel disease. And lastly, Count VIII states that the appellant signed all patient records as the attending physician of the patient, when in fact he was not the attending physician. These findings may have been insufficient if they simply stated that the doctors treatment of these six patients was grossly incompetent. However, these findings go beyond a mere declaration of gross incompetence. The underlying facts are also given which support the finding of gross incompetence. Therefore we must conclude that these findings of fact are not insufficient as a matter of law.

■ The appellant's final contention on appeal is that the Board of Examiners and the circuit court erred in not applying the standard of care used in tort actions to determine whether the appellant's alleged wrongful acts demonstrated gross incompetence, as set forth in SDCL 36–4–29.[3] In support of this argument, appellant cites *Appeal of Schramm*, 414 N.W.2d 31 (S.D. 1987). In *Schramm* we stated that "where issues of competence and negligence are of a complicated nature, expert testimony is required to establish the proper 'competency standards' and whether or not they are met." *Schramm, supra*, at 36. We determined that the proper standard to be applied in *Schramm* was the tort standard of care primarily because the appellant in *Schramm* had his license to practice dentistry suspended on the grounds of *negligent* patient care. As negligence is inherently a concept of tort law, we held that the tort standard of care should have been applied in *Schramm*.

■ The present case is clearly distinguishable from *Schramm*. Here, the ap-

---

**3.** According to South Dakota Tort Law, the standard of care which applies to a physician is the same standard of care which applies to all professions. *Lenius v. King*, 294 N.W.2d 912 (S.D. 1980), *Magbuhat v. Kovarik*, 382 N.W.2d 43 (S.D.1986). This standard has been defined as follows:

> In performing professional services for a [patient], a [physician] has the duty to have that degree of learning and skill ordinarily possessed by [physicians] of good standing engaged in the same type of practice in the same or similar locality.

*Lenius* at 913. *See also* S.D. Pattern Jury Instruction 105.01.

pellant's license to practice medicine was suspended on the grounds of gross incompetence, *not* negligence. The standards used for determining negligence and competence are separate and distinct. In professional negligence actions one must generally consider the locality of practice in determining the standard of care for professionals.[4] The locality of practice, however, is not a factor to be considered in determining issues of competence. The standard used to determine competence or incompetence refers to that minimum degree of "skill and knowledge necessary for the performance of characteristic tasks of a given profession in at least a reasonably effective way." *Board of Dental Exam. v. Brown D.D.S.*, 448 A.2d 881, 883 (Me.1982). All physicians in this State must possess this minimum degree of knowledge and skill in order to receive and maintain a license to practice in this State, irrespective of the locality in which they may practice. Therefore, we believe it is clear that the tort standard of care should not be applied in determining issues of competence. Furthermore, we believe it is clear that this minimum degree of skill and knowledge required to practice medicine in this state represents the state-wide standard of competence against which the appellant's conduct must be judged. *See generally, Dailey v. North Carolina Board of Dental Examiners*, 309 N.C. 710, 309 S.E.2d 219 (1983). As the appellant was charged with "gross incompetence," his conduct must demonstrate a gross deviation from this standard. The term "gross" relates solely to the matter of degree. *Caldwell v. Arizona State Board of Dental Exam.*, 137 Ariz. 396, 670 P.2d 1220, 1224 (App.1983).

■ Having reviewed the record in this case, we believe that the experts sufficiently established the aforementioned state-wide standard of competence, as well as the appellant's gross deviation therefrom. Any uncertainty regarding the establishment of this standard was due in part because of the appellant's insistence upon the application of the tort standard of care,

and also because of certain similarities between the national and state-wide standards of competence. In spite of this uncertainty, we believe that the expert testimony in this case clearly reflects that according to this statewide standard, physicians practicing in this State must keep timely records of patient care, they must properly supervise any physician assistants working under them, and they must utilize treatment methods which may be deemed reasonably effective and which pose no significant hazards to the patients. The expert testimony clearly reflects that the appellant fell far short of meeting the aforementioned requirements of the statewide standard.

According to the record, on a number of occasions the appellant failed to timely record incidents of patient treatment. In fact, the evidence reflects that in one instance the appellant did not properly record information gathered after a patient examination until five months after the examination had taken place. The record further reflects that the appellant prescribed antibiotic drugs in such a way as to make the patient more susceptible to reaction and to developing resistant organisms. Additionally, the expert's testified that these antibiotic drugs were prescribed for only two days which is not sufficiently long enough for these drugs to take effect. It is also clear from the record that the appellant was involved in an operation in which he had the duty to prepare the patient for surgery. The appellant failed to prepare the patient for surgery, thus subjecting the patient to potential life threatening post-operative infection. Finally, the evidence reflects that the appellant signed patient records in spite of the fact that he had never seen the patient, but rather it was his assistant who had rendered care to this patient. This clearly represents a failure by a physician to properly supervise his assistant. Although these facts represent but a few of those asserted against the appellant, we believe this evidence alone

---

**4.** With respect to this statement, it should be noted that the "locality rule" defined in footnote 3 does not apply to specialists in medicine as they must adhere to a national standard of care. *See, Shamburger v. Behrens*, 418 N.W.2d 299 (S.D.1988).

would support the conclusion that the appellant grossly deviated from the minimum statewide standard, and that these deviations reflected gross incompetence on his part.

Our standard of review for questions of fact is the clearly erroneous standard. *Permann v. Department of Labor,* 411 N.W.2d 113, 116 (S.D.1987). In this instance, the "application of the rule of law to the facts requires an inquiry that is 'essentially factual.'" *Id.* at 119, *quoting Pullman Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982). Accordingly, the clearly erroneous standard applies. Having reviewed the record in this case, we have determined that the Board of Examiners was not clearly erroneous in finding that the appellant's conduct demonstrated gross incompetence. Therefore, we affirm the circuit court.

Judgment is affirmed.

All the Justices concur.