GILBERTSON, Chief Justice
(dissenting).
[¶ 53.] Lenius v. King, 294 N.W.2d 912 (S.D.1980), and other cases establish that South Dakota follows the locality rule in determining whether an attorney’s conduct breaches the standard of care, which results in legal malpractice. I conclude that especially in this case, retention of 'the locality rule is the correct approach, rather than adopting a state or national standard. Because I am not convinced that the circuit court abused its discretion in striking Lillehaug’s testimony, and because I conclude that Hamilton failed to properly make a motion for continuance, the circuit court’s decision to grant summary judgment in favor of Sommers should be affirmed.
[¶ 54.] 1. Justification for adherence to the locality rule.
[¶55.] The Court limits the support Lenius provides for the application of the locality rule in South Dakota. The Court states that “[although the trial court in Lenius gave a jury instruction that included locality, that part of the instruction was not appealed and was thus not analyzed by the Court[.]” Instead, the Court concludes that the issue decided in Lenius was merely whether an expert was required to testify as to an attorney’s standard of care. However, despite distinguishing our (passive) endorsement of the locality rule in Lenius, the Court recognizes that we there stated, “The trial court applied the same standard of care required of a lawyer that is settled for the medical profession.” Lenius, 294 N.W.2d at 914. At the time, the standard that applied to the medical profession was the locality rule.[10] See id. (citing Hansen v. Isaak, 70 *870 S.D. 529, 581, 19 N.W.2d 521, 522 (1945)) (“The law requires that a physician shall have the degree of learning and skill ordinarily possessed by physicians of good standing practicing in the same community....”)- We have also said that “[i]n professional negligence actions one must generally consider the locality of practice in determining the standard of care for professionals.” Matter of Yemmanur, 447 N.W.2d 525, 529 (S.D.1989). In People ex reí. M.H., we actually expanded the concept of a locality rule to require that an “expert witness” in an Indian Child Welfare Act case be an expert on the child’s tribe and not just on Native American culture in general. 2005 S.D. 4, ¶ 12, 691 N.W.2d 622, 626.
[¶ 56.] Although other policy considerations may have necessitated the creation of the locality rule, our continued adherence to it is prescribed by the same evi-dentiary concerns underlying the fundamental qualifications for the admissibility of any expert testimony: the testimony must be reliable and relevant. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999); Burley v. Kytec Innovative Sports Equip., Inc., 2007 S.D. 82, ¶ 25, 737 N.W.2d 397, 406 (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993)). These two evidentiary concerns are embodied in SDCL 19-15-2 (Rule 702), which governs the admissibility of expert testimony. It reads, in pertinent part:
If ... specialized knowledge -will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data, (2) The testimony is the product of reliable principles and methods, and (3) The witness has applied the principles and methods reliably to the facts of the case.
Id. As a rule of exclusion that restricts who may qualify as an expert witness, see 2 Ronald E. Mallen & Jeffrey M. Smith, with Allison D. Rhodes, Legal Malpractice § 20:5 (2014 ed.) (“If expert testimony is required locality considerations may limit the geographical area from which expert witnesses can be selected.”), the locality rule is now, in essence, a manifestation of Rule 702.
[¶ 57.] As a manifestation of Rule 702, the locality rule is relevant whenever a party proffers an expert witness, contrary to the Court’s conclusion that “in many cases locality is not relevant to the application of the standard of care.” While I agree that a witness’s geographic location may not always be relevant,[11] a potential witness’s knowledge of the legal peculiarities of a particular geographic area cer *871 tainly is relevant in every case. The absence of such peculiarities does not change the relevance of the locality rule in any way. The rule should not be read to apply only when local conditions create a legal landscape that differs from a state or national standard. Rather, when the local standard is coextensive with the applicable state or national standard, the result under the locality rule is, not surprisingly, the same as the result under the state or national standard. Furthermore, if circumstances are such that the local standard is obviously coextensive with that of the state or nation, as the case may be, the circuit court has discretion to “avoid unnecessary ‘reliability" proceedings in ordinary cases where the reliability of an expert’s methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert’s reliability arises.” See Kumho, 526 U.S. at 152, 119 S.Ct. at 1176. In other words, even though the locality rule is always relevant, the circuit court maintains its usual control and discretion over the admissibility of expert testimony.
[¶ 58.] As a product of the expert qualification requirements embodied in Rule 702 and Daubert, the locality rule is not only relevant, it is a necessary consideration whenever a party proffers an expert witness. See State v. Guthrie, 2001 S.D. 61, ¶ 32, 627 N.W.2d 401, 415 (“Before admitting expert testimony, the court must address [reliability and relevance].”). “The objective of [this gatekeeping requirement] ... is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.” Kumho, 526 U.S. at 152, 119 S.Ct. at 1176. If a proffered expert lacks knowledge of the unique conditions of a particular geographic area, he or she cannot be qualified as an expert under SDCL 19-15-2 (Rule 702). Thus, application of the locality rule in the qualification process prevents a party from qualifying an expert under a homogenized state or national standard and then having that expert testify on purely local matters that lie outside the witness’s “knowledge, skill, experience, training, or education[.]” See SDCL 19-15-2 (Rule 702). After all, “[t]he. value of the opinion of an expert witness is no better than the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true. It may prove little if only partially true.” Bridge v. Karl’s, Inc., 538 N.W.2d 521, 525 (S.D.1995). See also People ex rel. M.H., 2005 S.D. 4, ¶ 15, 691 N.W.2d at 627.
[¶ 59.] The Court’s proposal reverses the expert qualification process. The Court suggests that the circuit court must “consider locality, custom, and special skills in determining ‘similar circumstances.’ The court should specifically identify the ‘similar circumstances,’ if any, to be used by the jury.... The trier of fact must apply that standard of care and address breach of duty, proximate and factual causation, and actual injury.” While local conditions function as a filter for qualifying an expert in a Daubert hearing under the locality rule, those same conditions would merely serve to define the jury instructions under the Court’s decision today. There are several problems with this approach.
[II60.] First, such an approach tasks the jury with the burden of applying negligence principles without the benefit of expert guidance. In Lenius we approvingly quoted the Georgia Court of Appeals’ summary of the expert rule as it applies to the legal profession.
*872 [E]xcept in clear and palpable cases,..., expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice. The reason for this requirement is simply that a jury cannot rationally apply negligence principles to professional conduct absent evidence of what the competent lawyer would have done under similar circumstances, and the jury may not be permitted to speculate about what the “professional custom” may be. Expert evidence as to the “professional custom” is required in malpractice actions against other professionals.
294 N.W.2d at 914 (quoting Hughes v. Malone, 146 Ga.App. 341, 247 S.E.2d 107, 111 (1978)). The situation described by the Georgia Court of Appeals is exactly the situation in which this Court will place the juries of this State. By removing the consideration of local legal conditions from the expert qualification process, the Court’s approach necessarily opens the door for a witness to be qualified as an “expert” — perhaps lacking even a minimum quantum of knowledge about local conditions — and to subsequently testify and offer opinion as to whether an attorney’s actions conform to a state or national standard of care. If the circuit court dutifully applies this Court’s instructions and includes some of those local conditions in instructing the jury as to the standard of care, then in the best case scenario, the jury will functionally be placed in the situation of applying negligence principles to professional conduct without the benefit of expert guidance. In the worst case, the jury might actually be led astray by ignorant testimony draped in the cloak of authority. Either outcome is contrary to Daubert and to the axiom that “[t]he fundamental test for admission of expert testimony ... is whether it will assist the jury in resolving the factual issues before it.” See State v. Corey, 2001 S.D. 53, ¶ 15, 624 N.W.2d 841, 845 (emphasis added). See also Daubert, 509 U.S. at 591-92, 113 S.Ct. at 2796 (“Rule 702’s ‘helpfulness’ standard requires a valid ... connection to the pertinent inquiry as a precondition to admissibility.”).
[¶ 61.] Second, the Court’s proposed treatment of local conditions — to require a showing from the party seeking the benefit of those circumstances and possible inclusion in the jury instructions — does not provide a functional rule upon which a practicing attorney can rely. To further complicate matters, the Court suggests that “there may be cases where it is not appropriate to apply a statewide standard, and we should not limit ourselves to only using a statewide approach.” Apparently, this means we will sometimes apply a national standard instead of a state standard. Under the locality rule, an attorney is always put on notice that he or she will be charged with performing in a manner consistent with a duty of care that incorporates the legal landscape in which he or she practices. Under the Court’s approach, on the other hand, an attorney must wait to find out whether he or she must comply with a local, state, or national standard until the jury instruction stage— well after any violative conduct has occurred.
[¶ 62.] Third, the Court’s proposed abandonment of the locality rule could significantly alter the standard under which we review a circuit court’s treatment of local legal circumstances. “Trial courts retain broad discretion in ruling on the admissibility of expert opinion. Decisions to admit or deny opinion evidence will not be reversed absent a clear showing of abuse of discretion.” Guthrie, 2001 S.D. 61, ¶ 30, 627 N.W.2d at 414-15 (citations omitted). On the other hand, “no court has discretion to give incorrect, mislead- *873 mg, conflicting, or confusing instructions[.]” Vetter v. Cam Wal Elec. Coop., Inc., 711 N.W.2d 612, 615 (S.D.2006). Consequently, while we “generally review a trial court’s decision to grant or deny a particular instruction under the abuse of discretion standard[,] ... when the question is whether a jury was properly instructed overall, that issue becomes a question of law reviewable de novo.” Vetter, 711 N.W.2d at 615. Thus, relegating the consideration of local conditions to the jury instruction stage not only increases the likelihood that a witness will be allowed to offer expert testimony on a subject in which he or she lacks expertise — in violation of Rule 702 and Daubert — it will also tend to limit a circuit court’s power over what has traditionally been a matter of judicial discretion by eroding the deference with which we review those decisions.
[¶63.] In exchange for the concerns outlined above, the Court’s suggested approach offers no potential gain over continued adherence to the locality rule. There is no difficulty in applying the locality rule to cases that do not involve local legal idiosyncrasies — in such a case the local standard is the state standard. Further, when considered as a manifestation of a court’s duty to ensure the reliability and relevance of expert testimony, the locality rule will not frequently deviate from this state standard. Thus, as the Court noted, a “statewide focus would usually be appropriate.” This is true, however, not because we decline to apply the locality rule in some situations; rather, it is a natural state resulting from local standards that tend to be coextensive with the prevailing standard across the State.[12] When viewing the locality rule as a component of the expert qualification process, the circuit court maintains its usual control and discretion over the admissibility of expert testimony. If a particular locale does not have any unique legal conditions, then the result of applying the locality rule is the same as if it had not been applied at all. In short, we need not completely abandon the locality rule to achieve the Court’s desired goals.
[¶64.] The Court’s decision today to remove the consideration of locality from the expert witness qualification process is unnecessary and limits a circuit court’s ability to ensure that expert witnesses do, in fact, possess heightened expertise on whatever issue they are called upon to explain. Simply declaring that we apply a state or national standard does not actually remove the local legal peculiarities that attorneys in this state must handle on a daily basis. For the above reasons I would retain the locality rule.
[¶ 65.] 2. Application of the locality rule to this case.
[¶ 66.] This is a case about bees. Specifically, it is a case about the State of South Dakota’s regulation of the bee industry. According to the record, beekeepers generally pay landowners for the right to place bee hives on their land in South Dakota. The landowner usually gets com *874 pensation for this grant either in the form of cash or honey. The permission by the landowner must be registered with the South Dakota Department of Agriculture. See generally SDCL 38-18.
[¶ 67.] As this case is venued in Roberts County, the legal issues to which an attorney must apply reasonable knowledge, skill, and care are tied not only to the South Dakota statutes concerning bees, but also to the legal landscape of that particular locale. The rights and responsibilities of an apiarist maintaining hives in an area, as well as the value of any given bee site, are directly influenced by the scope of the State’s jurisdiction to regulate bee operations in that specific area. An attorney advising his client in a factual situation such as this would have to have knowledge of the State’s regulatory authority in Roberts County and adjoining areas.
[¶ 68.] Roberts County has legally established boundaries. See SDCL 7-1-55. On the northern boundary is the State of North Dakota. On the eastern boundary is the State of Minnesota. However, between Roberts County and Minnesota are two interstate lakes — Lake Traverse and Lake Big Stone — which are subject to at least some Federal control. See North Dakota v. Minnesota, 263 U.S. 365, 376, 44 S.Ct. 138, 140, 68 L.Ed. 342 (1923). Moreover, 15% of the land located within Roberts County is within the status of “Indian Country,” see 18 U.S.C. § 1151, in the form of trust allotments. DeCoteau v. Dist. Cnty. Ct., 420 U.S. 425, 428, 95 S.Ct. 1082, 1085 43 L.Ed.2d 300 (1975); see also United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1903) (addressing authority of Roberts County to impose various taxes on lands “held by any Indian or Indian tribe”). Other areas of Roberts County contain “dependent Indian communities” that, under 18 U.S.C. § 1151, are also subject to tribal and Federal control. DeCoteau, 420 U.S. at 428, 95 S.Ct. at 1085; see also United States v. South Dakota, 665 F.2d 837 (8th Cir.1981). In addition, the Sisseton-Wahpeton Sioux Tribe has its own constitution, codes, and court system. DeCoteau, 420 U.S. at 464-67, 95 S.Ct. at 1102-04 (Douglas, J., dissenting); Frank Pommersheim, South Dakota Tribal Court Handbook 35-39 (1988).
[¶ 69.] As the bee goes about its daily business, it is oblivious to whether it has crossed a state line, is flying over interstate waters, or is now enjoying the vegetation of Indian Country. However, an attorney advising clients like those involved in this litigation would have to have a working knowledge of the legal rights granted to a bee keeper by SDCL 38-18, and must understand the reach of those rights in this geographical area. We held in Staab v. Cameron, 351 N.W.2d 463, 466 (S.D.1984), that an attorney is only liable for malpractice for losses actually sustained as a proximate result of the conduct of the attorney. Although the expert witness for the Plaintiff, here, is a highly qualified attorney in the Minneapolis area, he admits he has no such knowledge of the legal status of various tracts in Roberts County. He said he did consult attorneys in Yankton and Rapid City, both hundreds of miles away from the Roberts County locale. There is no showing in the record that these attorneys, who are undoubtedly highly competent, possess the professional knowledge that it would take to navigate this legal minefield. This, it seems to me, is the weakness in adopting a state standard rather than retaining our locality rule.
[¶ 70.] Hamilton argues that the application of the locality rule will prevent plaintiffs from finding attorneys willing to testify as experts for a plaintiff. If accurate, it would be expected that an appeal *875 addressing application of the locality rule in this state would have occurred in the last 34 years since Lenius was decided. In addition to Lenius, there have been several legal malpractice cases in which the plaintiff found an expert. See, e.g., Behrens v. Wedmore, 2005 S.D. 79, 698 N.W.2d 555; Estate of Gaspar v. Vogt, Brown & Merry, 2003 S.D. 126, 670 N.W.2d 918; Dakota Cheese v. Ford, 1999 S.D. 147, 603 N.W.2d 73.
[¶ 71.] Retention of the locality rule is not a method to allow attorneys in rural settings to “get away” with more, or otherwise have a more lax standard of care. Given a legal and factual background such as in this case, the locality rule may instead serve to heighten the standard compared to a state standard of care.
Unlike the medical field, however, [an attorney’s] knowledge of local practices, rules, or customs may be determinative of, and essential to, the exercise of adequate skill and knowledge. An attorney must know local statutes, ordinances or rules. Frequently, trial attorneys place great weight on the cultural, economic or social characteristics of the community in which the matter is to be tried.
Mallen et al., supra ¶ 56, § 20:5. An attorney’s knowledge of the local jury, judges, and cultural issues all affect whether the attorney exercised the reasonable standard of care. Id. The entirety of the legal and factual landscape of the locality dictates what actions are professionally reasonable. In Roberts County and other locations across South Dakota, an attorney may need to exhibit different knowledge or take additional or greater precautions, given what a reasonable attorney should know about the unique jurisdictional, legal, geographical, cultural, and practical considerations of that area.
[¶ 72.] The circuit court determined that “[c]ertainly Lillehaug could acquaint himself with the South Dakota standard of care; it just did not occur in this situation.” Because nothing in the record indicates that the circuit court abused its discretion in determining that Lillehaug was not qualified to testify as to the appropriate standard of care in South Dakota — let alone Roberts County — I see no reason to reverse its decision on this issue.
[¶ 73.] 3. Hamilton’s failure to properly move for continuance.
[¶ 74.] Because of its decision on the locality rule, the Court does not address whether the circuit court should have granted Hamilton a continuance. Hamilton claims that he “promptly raised the issue of a continuance at summary judgment and in a post-hearing motion for hearing on setting trial date and notice of newly discovered evidence.” Thus, he concludes that “the circuit court committed reversible error by failing to give Hamilton the opportunity to obtain a replacement expert witness.” However, while Hamilton may have mentioned the issue of continuance, the record does not reflect — and he does not seem to claim — that he ever actually moved the circuit court for continuance. Unfortunately for Hamilton, the South Dakota Legislature has outlined specific requirements for requesting continuance.
All applications for continuance must be made, by motion.... All such motions shall be in writing and accompanied by affidavits in support of the motion, which affidavits shall set forth with particularity the grounds and cause for such motion as well as the efforts of the party or the party’s attorney to avoid such delay.
SDCL 15-11-6 (emphasis added). Even if we were to conclude that the one sentence contained in Hamilton’s Motion for Hearing On Setting Trial Date dedicated to *876 requesting permission to obtain a second expert served as a de facto motion for continuance — I am convinced it does not— Hamilton clearly faded to submit the required affidavits in support of that motion.
[¶ 75.] Perhaps a continuance would have been appropriate in this case, considering that at the time the circuit court struck Lillehaug’s testimony, no trial date had yet been determined.[13] See Tosh v. Schwab, 2007 S.D. 132, ¶ 26, 743 N.W.2d 422, 430 (“[T]here would have been no delay or prejudice ... because the trial date had not yet been scheduled”). On the other hand, the locality rule has remained undisturbed for decades, including all times relevant to this litigation, regardless of the Court’s decision today. Perhaps failing to secure an expert on the legal landscape of Roberts County was simply bad planning on Hamilton’s part — a factor that would militate against granting a continuance. Id. ¶ 25, 743 N.W.2d at 430 (quoting State v. Moeller, 2000 S.D. 122, ¶ 8, 616 N.W.2d 424, 431). We have nothing to review, however, because Hamilton’s counsel did not properly move for continuance and, consequently, the circuit court made no decision regarding the same. It is ironic that Hamilton’s counsel — in an action against other attorneys based, in part, on their failure to make a motion for continuance — themselves failed to properly file a motion for continuance.
[¶ 76.] Expert testimony was necessary in this case. See Lenius, 294 N.W.2d at 914 (quoting Hughes, 247 S.E.2d at 111).[14] The circuit court determined that Lille-haug had not familiarized himself with Roberts County prior to testifying and, consequently, struck his testimony. I am not convinced that the court abused its discretion in reaching this conclusion. Without an expert to testify as to the standard of care, summary judgment was appropriate and Hamilton’s remaining issues are moot.[15] Therefore, I dissent.

. As the Court points out, we subsequently adopted a "national standard of care for specialists in medicine.” Shamburger v. Behrens, 418 N.W.2d 299, 306 (S.D.1988), overruled on other grounds by Russo v. Takata Corp., 2009 S.D. 83, 774 N.W.2d 441. In the year following Shamburger, however, we confirmed that the standard for non-medical professionals retained consideration of locality. Matter of Yemmanur, 447 N.W.2d 525, 529 (S.D.1989). *870 The reason for this is simple: the knowledge and procedure required to perform an appendectomy, for example, is largely the same regardless of whether the doctor performing the operation is located in South Dakota, North Dakota, Minnesota, or Indian Country. In comparison, an attorney representing an apiarist in Roberts County might be expected to understand and apply the law and procedure of upwards of five distinct bodies of law.

. The circuit court quite correctly pointed out that "the locality concept is not concerned with where the expert lives, but is concerned with the locality he or she is opining about[ ]” and that "[t]he expert testifying as to the standard of care does not have to be from South Dakota provided that the person has the ability to opine what the South Dakota standard is.” Modern communications and the general availability of information offers the opportunity for practically any attorney to become an expert regarding a particular locale, even if that attorney does not practice in that geographic area.

. The circuit court anticipated that we would expand the locality rule to encompass the entire state. It based its prediction, in part, on the conclusion that "[p]assing the South Dakota Bar Examination indicates that the standard of care should be statewide and not localized to smaller communities.” However, we have previously said that "[t]he standards used for determining negligence and competence are separate and distinct.” Yemmanur, 447 N.W.2d at 529. While requiring an individual to pass a state bar examination as a prerequisite to practicing in this state may be indicative of a state competency standard, it has no bearing on a tort negligence standard of care. Cf. id. (”[W]e believe it is clear that this minimum degree of skill and knowledge required to practice medicine in this state represents the state-wide standard of competence_”).

. The circuit court originally set a trial date of April 16, 2013. However, the court can-celled that date after learning of Lillehaug’s possible appointment to the Minnesota Supreme Court. At the time the circuit court struck Lillehaug’s testimony, it had not set a new trial date.

. In its memorandum opinion, the circuit court noted the parties also agreed that expert testimony was necessary to establish the standard of care.

. Hamilton was required to prove "(1) the existence of an attorney-client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, breached that duty; (3) the attorney’s breach of duty proximately caused injury to the client; and (4) the client sustained actual damage.” Peterson v. Issenhuth, 2014 S.D. 1, ¶ 17, 842 N.W.2d 351, 355 (emphasis added) (quoting Chem-Age Indus., Inc. v. Glover, 2002 S.D. 122, ¶ 24, 652 N.W.2d 756, 767) (internal quotation marks omitted). Because proof of all four elements is required to establish a malpractice claim, a necessary failing of any one element — such as the failure to produce an expert to articulate the applicable standard of care — alone renders the claim legally insufficient. Therefore, I would not reach the issue of proximate cause.